Opinion by Judge THOMAS; Dissent by Judge BYBEE.
OPINION
THOMAS, Circuit Judge:
In this case, we consider how the Tax Court should review appeals for equitable innocent spouse relief from joint and several liability for unpaid taxes under 26 *982 U.S.C. § 6015(f). We join the Eleventh Circuit and hold that the Tax Court properly considered new evidence outside the administrative record. We also conclude that the Tax Court correctly applied a de novo standard of review in determining the taxpayer’s eligibility for equitable relief. We affirm the judgment of the Tax Court.
I
Thousands of citizens each year discover to their surprise that they are liable for their former spouse’s tax debt.[1] Most of them are recently divorced, separated, or widowed women.[2] Many are victims of domestic abuse, whose ability to review or correct a joint return before it is filed is impaired.[3] A substantial number are low-income, single parents.[4]
Congress has not turned a blind eye to this situation, and the legislative history of its response is important to our understanding of the Tax Court’s role.
Before 1918, each spouse was required to file a separate return. In 1918, Congress first permitted married couples to file a joint return,[5] and in 1921 clarified that the tax on a joint return was to be computed on aggregate income.[6] Shortly thereafter, the Internal Revenue Service (“IRS”) took the position that each spouse was individually responsible for the entire tax debt.[7] However, we rejected that joint and several liability interpretation in 1935 and held that the IRS should apportion tax liability on the basis of each spouse’s respective income. Cole v. Comm’r, 81 F.2d 485, 489 (9th Cir.1935). Congress legislatively overruled Cole in 1938, adopting the IRS theory of joint and several marital tax liability,[8] and in 1948 created a separate tax schedule for joint returns.[9]
*983 The “marriage bonus” awarded when filing jointly reduced tax liability for many married couples who resided in certain states. However, joint returns also imposed a heavy burden on some spouses who discovered they were liable for extraordinary tax debts created by a former spouse’s fraudulent activities. During the first five decades of the income tax, the only way a spouse could avoid joint and several liability for taxes owed was to prove that he or she signed a joint tax return under duress. Reg. § 1.6013-4(d).[10] An individual who discovered a tax debt on illicit income concealed by her spouse had no reprieve.
The Tax Court commented on the unfairness of the rule, noting in one case that “[although we have much sympathy for petitioner’s unhappy situation and are appalled at the harshness of this result in the instant case, the inflexible statute leaves no room for amelioration.” Scudder v. Comm’r, 48 T.C. 36, 41 (1967). The court concluded that “only remedial legislation can soften the impact of the rule of strict individual liability for income taxes on the many married women who are unknowingly subjected to its provisions by filing joint returns.” Id.
In 1971, Congress passed the Innocent Spouse Act to provide relief from joint and several liability for innocent spouses in limited circumstances. Act of Jan. 12, 1971, Pub.L. No. 91-679, 83 Stat. 675 (1971). Under this legislation, taxpayers were eligible for relief only in cases involving unreported income and only if they could fulfill certain strict requirements. The scope of this hardship relief was expanded in 1984, but still required a spouse seeking relief to demonstrate (1) that a joint return was made for the taxable year; (2) that the joint return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) that the taxpayer did not know, and had no reason to know, of the substantial understatement when he or she signed the joint return; and (4) that it would be inequitable to hold the taxpayer liable for the deficiency in income tax attributable to the substantial understatement. Deficit Reduction Act of 1984, Pub.L. 98-369, § 424, 98 Stat. 494, 801.
In 1995, the American Bar Association (“ABA”) examined the innocent spouse defense and, after concluding that the defense did little to help “a reasonably knowledgeable spouse to protect herself (or, in rare cases, himself) against an unknown and unexpected tax liability,” proposed replacing the joint and several tax liability standard with a proportional liability standard. ABA Section of Taxation Domestic Relations Committee, Comments on Liability of Divorced Spouses for Tax Deficiencies on Previously Filed Joint Returns, 50 Tax Law. 395, 402 (1997).
In response, Congress directed the GAO and the Department of the Treasury to study the innocent spouse relief provisions and to evaluate the ABA proposal.[11] After evaluating the responses, Congress engaged in innocent spouse taxpayer reform by repealing the prior provisions altogether and enacting the current innocent spouse laws, codified at 26 U.S.C. § 6015, IRS Restructuring and Reform Act of 1998, Pub.L. No. 105-206, § 3201(b), 112 Stat. 685, 734-40. Under § 6015, the IRS may grant taxpayers relief from joint lia *984 bility in three contexts. Sections 6015(b) and (c) apply when taxpayers have demonstrated an “understatement” or “deficiency” on joint returns filed with the IRS.[12] In non-deficiency cases, “where a spouse asks for relief on her own initiative, and not in response to a deficiency action or moves by the IRS to collect a tax debt,” relief is available through § 6015(f), which provides for equitable relief where there is an underpayment of tax on a correct return.[13]
As originally enacted, § 6015(e)(1) allowed taxpayers denied relief by the IRS under subsections (b) or (c) to petition the Tax Court for relief. In Ewing v. Commissioner, 118 T.C. 494 (2002), the Tax Court concluded that § 6015(e)(1) granted it jurisdiction over non-deficiency cases brought under § 6015(f) as well. We reversed the Tax Court’s assertion of jurisdiction over § 6015(f) petitions in Ewing v. Commissioner, 439 F.3d 1009 (9th Cir. 2006), after finding that the plain language of the statute precluded this interpretation. Congress thereafter amended § 6015(e)[14] to expressly grant the Tax Court jurisdiction to review petitions for equitable relief under § 6015(f) that have been denied by the IRS, like the petition at issue here. Tax Relief and Health Care Act of 2006, Pub.L. No. 109-432, div. C, § 408, 120 Stat. 2920, 3061-62.
In implementing the innocent spouse tax relief enacted by Congress, the Depart *985 ment of the Treasury promulgated a regulation establishing the factors to be utilized in analyzing requests for equitable relief. The IRS established a single processing site in Cincinnati, Ohio to handle the claims, known as “The Commissioner’s Cincinnati Centralized Innocent Spouse Operation” (“CCCISO”). CCCISO staff screen innocent spouse tax relief requests to determine whether they meet basic eligibility requirements. Applications that do not meet the requirements are closed at screening, and the taxpayer is informed of the decision. If a claim meets basic eligibility requirements, the file is transferred to an examiner to further review the claim and decide whether relief should be granted. When a decision is made, the taxpayer is informed and given thirty days to appeal to the IRS’s Office of Appeals. After the administrative appeal is decided, the IRS sends a final determination letter. The taxpayer then has the right to appeal the IRS decision to federal court. The taxpayer has the option of either petitioning the U.S. Tax Court for review, or paying the deficiency and filing a refund claim in federal district court or the Court of Federal Claims.
II
Petitioner Karen Marie Wilson is a fairly typical applicant for innocent spouse relief. For the first fourteen years of their marriage, her husband Lloyd worked as a self-employed insurance salesman. In 1997, Lloyd started a venture capital business that dramatically increased his income: he went from earning approximately $30,000 a year as a salesman to netting $20,000 a month. The new business, however, was a Ponzi scheme. In May of 1999, the Securities and Exchange Commission issued a cease-and-desist order that abruptly ended Lloyd’s enterprise. Significant tax liabilities were levied. Claiming ignorance of his fraudulent actions, Karen applied for innocent spouse relief.
Wilson contends that she “did not understand the nature of her husband’s business—she believed it was legitimate and had no knowledge about its operations or fraudulent nature.” Although Wilson had prepared the couple’s joint personal tax returns in previous years, she did not prepare the 1997, 1998, or 1999 returns at issue in this appeal, because Lloyd’s new business made the necessary accounting much more complicated than it had been previously. Instead, the couple hired an accountant who prepared the Wilsons’ 1997 and 1998 joint returns without reporting the substantial income Lloyd was sending to offshore accounts. In 1999, a new accountant advised the Wilsons to amend their returns for 1997 and 1998 and file a return for 1999 to report the offshore income; the total tax liability reported on these returns was $540,000. Wilson signed these returns and acknowledges that she was aware of the balance due on them. She contends, however, that she believed the tax debt would be paid when the returns were filed because her husband was “still in business during this time.”
The taxes Wilson and her husband owed, however, were never paid, and in early 2002, Wilson filed a Request for Innocent Spouse Relief with the IRS. Though Wilson was still married to Lloyd at the time of this filing, they were allegedly estranged and living together only because Wilson lacked the financial resources to move out of the family home. In her application for relief, Wilson described her financial status as one “of survival,” given her $11 hourly wage rate as a clerk at a commercial real estate company. Wilson reported her monthly expenses as exceeding her monthly income by $76. Because Lloyd had not sought new work *986 after the demise of his venture capital business, Wilson stated that she did not know “what my spouse is able to provide.” She also noted that she and Lloyd were “not communicating well” and were not able to “come to an agreement ... in this matter.” Wilson did not allege any domestic abuse.
The OCCISO denied Wilson relief. The OCCISO found that Wilson lacked reasonable belief that the outstanding taxes would be paid, because “there was a balance owing from 1998 when the 1999 return was filed.” The agency also concluded that since the business income on which the taxes were owed belonged to both Wilson and her husband, she could not “be relieved of [her] own liability.”
Wilson appealed the denial to the IRS’s Office of Appeals. On February 11, 2004, an appeals officer sent Wilson a letter detailing the factors that favored her petition for relief, the factors that weighed against her petition for relief, and the factors that were neutral. The reasons that the officer believed justified a denial of relief included: (1) the fact that Wilson was still married and living with her husband; (2) her awareness of past taxes owed at the time she signed the returns; (3) her failure to disclose information about the income of other household members; and (4) that without substantiation, it appeared that half of the business and rental income on her tax returns was attributable to her. The appeals officer invited Wilson to submit specific additional information that could change the assessment of each of these factors.
Wilson did not submit any additional information. However, on March 3, 2004, she called the appeals officer to discuss her case and disclosed that although she and her husband still lived in the same house, she had begun divorce proceedings. In response, the officer delayed the hearing he had scheduled in his initial letter to Wilson for three months. The hearing, however, was never held, and on July 14, 2004, the officer sent a final letter asking to submit her “plan in dealing with [her] request for relief of the liability” by August 18, 2004. Wilson did not respond, and he closed the case, denying her relief. The Commissioner issued a final notice of determination on September 3, 2004, informing Wilson that her request for relief had been denied by the IRS.
Wilson petitioned the Tax Court for review of the administrative denial of her claim for equitable innocent spouse relief. The Tax Court initially heard testimony from Wilson in September 2005, but “[w]hen complicated facts and legal issues unfolded, [the court] arranged for pro bono counsel” to help Wilson prepare her case.[15] Wilson later submitted new exhibits that included detailed financial information and notified the court of her divorce, which had become final in April of 2007.
In 2008, the Tax Court reopened the record and held a second trial where Wilson again testified. The government made a continuing evidentiary objection to the introduction of any new evidence at both trials, arguing that review of the denial of equitable innocent spouse relief should be made solely on the basis of the record developed before the IRS. The Tax Court overruled these objections, relying on precedent from other Tax Court decisions.
The Tax Court determined that Wilson was entitled to relief under § 6015(f). It *987 explained that the Tax Court’s decisions in Porter v. Commissioner (Porter I), 130 T.C. 115 (2008), and Porter v. Commissioner (Porter II), 132 T.C. 203 (2009), established that the Tax Court should proceed de novo when reviewing § 6015(f) claims for innocent spouse.
After conducting a de novo review of Wilson’s appeal, the Tax Court determined that Wilson was entitled to equitable relief. With the expanded evidentiary record, the Tax Court found five factors favoring relief. The court determined that Wilson’s marital status, under a de novo review of the record, weighed in her favor as she had finalized her divorce before the second trial. This factor was not favorable to Wilson during the administrative phase of her case. The Court agreed with the Commissioner that Wilson had not received a significant benefit from her husband’s unpaid liability, a factor weighing in her favor.
In a thorough examination of the facts, the Tax Court concluded that Wilson had no knowledge or reason to know of the tax underpayment. The Court determined that credible evidence supported her testimony that she was ignorant of the SEC Cease and Desist Order. In addition, it concluded that even if she had known, it would have been reasonable for her to assume the couple had sufficient assets to satisfy the tax liability. No evidence had been submitted or considered during Wilson’s brief exchanges with the agent about this factor during the administrative process.
The Tax Court also concluded that Wilson would suffer significant economic hardship if the tax liability were imposed. The Tax Court found that her monthly income exceeded her expenses by $114, and that paying a $540,000 tax debt would cause her to be unable to meet reasonable basic living expenses. Because Wilson had not submitted detailed expense statements to the IRS, the Commissioner had found against her on this factor.
The Tax Court also concluded that the tax liability was solely attributable to Wilson’s husband. The Commissioner had concluded that because Wilson performed some clerical duties for the business, she should be allocated 50% of the fault. However, the Tax Court found that she was completely ignorant of his business activities and had no input into any business decisions.
Thus, the Tax Court found five factors weighing in favor of relief, four of which had been rejected by the Commissioner. The court acknowledged that had its review been restricted to the administrative record, these factors would have weighed against Wilson.
The IRS filed a timely notice of appeal to this Court. It did not contest the validity of the Tax Court findings. It only argues that the Tax Court should not have been permitted to consider new evidence and that its review should be confined to the administrative record under an abuse of discretion standard of review. Because the Tax Court’s scope and standard of review in § 6015(f) cases are questions of law, we review the Tax Court’s decision de novo. Keller v. Comm’r, 568 F.3d 710, 716 (9th Cir.2009).
Ill
The first question in this case is whether the Tax Court properly considered new evidence in considering Wilson’s appeal. Resolution of the issue turns on statutory analysis.
A
The “first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular *988 dispute in the case.” Robinson v. Shell Oil, 519 U.S. 387, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). This often requires “examining] not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy.” Children’s Hosp. & Health Ctr. v. Belshe, 188 F.3d 1090, 1096 (9th Cir.1999). If the plain meaning of the statute is unambiguous, that meaning controls. If the statutory language is ambiguous, then we consult legislative history. United States v. Haas, 198 F.3d 1167, 1174 (9th Cir. 1999). We need not rely on legislative history as an aid to interpretation unless “the legislative history clearly indicates that Congress meant something other than what it said.” Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 877 (9th Cir.2001) (en banc) (citing Perlman v. Catapult Entm’t, Inc. (In re Catapult Entm’t, Inc.), 165 F.3d 747, 753 (9th Cir. 1999)).
Section 6015(e) states that “an individual who requests equitable relief under subsection (f)” can “petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section.” 26 U.S.C. § 6015(e)(1) (emphasis added). A determination of whether innocent spouse relief is appropriate under § 6015(D, meanwhile, requires consideration of “all the facts and circumstances” relevant to a taxpayer’s petition. 26 U.S.C. § 6015(0(1). In the absence of any limiting language directing the Tax Court to consider only that evidence before the Commissioner during the administrative phase of review, “determining” the validity of a taxpayer’s request for innocent spouse relief in light of “all the facts and circumstances” suggests a de novo scope of evi-dentiary review in § 6015(0 cases.
The Eleventh Circuit, the only other circuit court to have considered the scope of the Tax Court’s review in § 6015(0 cases, reached the same conclusion in Commissioner v. Neal, 557 F.3d 1262 (11th Cir.2009). Reviewing the language of subsections (e) and (0, the Neal Court found that Congress intended the Tax Court to consider evidence outside the administrative record. 557 F.3d at 1265. As that Court explained:
Section 6015(e) expressly grants jurisdiction to the Tax Court to “determine the appropriate relief available to the individual.” 26 U.S.C. § 6015(e). Section 6015(e) does not say the taxpayer “may appeal” the Commissioner’s § 6015(0 decision to the Tax Court or that the Tax Court may hear an appeal. Rather, § 6015(e) authorizes the taxpayer to seek § 6015(0 relief from the Tax Court.

Id.

The Neal Court also found Congress’s use of the words “petition” and “determine” rather than “appeal” in § 6015(e)’s jurisdictional grant significant. Although appeals to determine whether the IRS made an appropriate decision about a request for innocent spouse relief may confine the Tax Court to considering only the administrative record, petitions to determine whether such relief is warranted suggest “something different”—namely, an authorization to proceed de novo. Id. at 1276; see also Friday v. Comm’r, 124 T.C. 220, 222 (2005) (“A petition for a decision as to whether relief is appropriate under section 6015 is generally not a ‘review’ of the Commissioner’s determination in a hearing but is instead an action begun in this Court.”).
B
The structure of the statute supports this conclusion, as well. Section 6015(e)’s jurisdictional grant to determine whether equitable relief is warranted in a § 6015(0 case must be read alongside subsection *989 CD's mandate to consider the totality of the circumstances before making an equitable relief determination. “Taking into account all the facts and circumstances” is not possible if the Tax Court can review only the evidence available at the time of the Commissioner’s prior determination. 26 U.S.C. § 6015(0(1).
Confining the Tax Court’s review to the administrative record before the Commissioner would also introduce significant inconsistencies in different types of § 6015(0 cases brought before the court. For instance, under § 6015(e)(4), a non-petitioning spouse may intervene in a § 6015(0 Tax Court proceeding and thereby introduce evidence outside the administrative record. 26 U.S.C. § 6015(e)(4) (“The Tax Court shall establish rules which provide the individual filing a joint return but not making ... the request for equitable relief under subsection (0 with adequate notice and an opportunity to become a party.”); see also Porter II, 132 T.C. at 219-220 (Gale, J., concurring) (finding the explicit provision permitting intervention by a non-petitioning spouse to “entail the distinct likelihood that new evidence will surface in the Tax Court proceeding.”). By “expressly providing for intervenors in section 6015(f) ... cases ... Congress contemplated a new record made initially in the reviewing court.” Porter II, 132 T.C. at 220 (Gale, J., concurring). Moreover, the right to intervene provided by § 6015(e)(4) would be eviscerated without the ability to present new evidence. Because the scope of the Tax Court’s review in § 6015(f) cases should be consistent regardless of whether a spouse decides to intervene, § 6015(e) must be interpreted to allow consideration of evidence outside the administrative record in all § 6015(f) petitions to the Tax Court.
An intervention by a non-petitioning spouse is not the only type of § 6015(f) case where the Tax Court can proceed de novo. There are two other contexts where a de novo scope of review is not only permitted, but expected. First, when a taxpayer requests § 6015(f) relief but the Commissioner fails to make a determination regarding the request within six months, the taxpayer may petition the Tax Court to render the determination. 26 U.S.C. § 6015(e)(1)(A). Such a determination would obviously occur upon de novo review of a record compiled at the Tax Court, because in this context, there would be no administrative record to consider. The Tax Court also proceeds de novo when confronted with taxpayers who raise relief under § 6015(f) as an affirmative defense in § 6015(b) and § 6015(c) deficiency cases. Comm’r v. Neal, 557 F.3d at 1272. As the Neal Court concluded, “without trials de novo under § 6015(e), substantially identical § 6015(f) claims would be treated differently.” Id. at 1272.
The government dismisses these procedural anomalies as either justified or resolvable through a remand to the Commissioner to make an initial administrative determination. The text of § 6015(e) suggests otherwise. Section 6015(e) not only makes no mention of remand, it instructs the Tax Court to proceed de novo when reviewing certain § 6015(f) petitions. Applicable precedent, moreover, restricts the Tax Court from remanding § 6015(f) cases to the Commissioner for further administrative consideration. Friday v. Comm’r, 124 T.C. 220, 222 (2005). “A de novo scope of review” appears to be the “only means by which [the Tax Court] can supplement an insufficient record” in § 6015(f) cases. Porter II, 132 T.C. at 225 (Wells, J., dissenting).
C
The government also contends that the Administrative Procedure Act (“APA”) requires the Tax Court to consider only *990 the administrative record as it existed at the time of the Commissioner’s equitable relief determination. See 5 U.S.C. § 706(2)(A) (authorizing reviewing courts to set aside agency actions found to be “arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law”).
1
Where Congress has enacted a special statutory review process for administrative action, that process applies to the exclusion of the APA. Bowen v. Massachusetts, 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); Steadman v. SBC, 450 U.S. 91, 105, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) (“[T]he general provisions of the APA are applicable only when Congress has not intended that a different standard be used in the administration of a specific statute.” (Powell, J., dissenting)); W. Watersheds Project v. Kraayenbrink, 632 F.3d 472, 497 (9th Cir.2011) (noting that the APA applies only where there is no other adequate remedy in court); Wash. Toxics Coal. v. EPA, 413 F.3d 1024, 1034 (9th Cir.2005).
As we have discussed, Congress has enacted extensive special provisions providing for judicial remedies in innocent spouse taxpayer relief cases. Section 6015(e) explicitly directs the Tax Court to make a “determination” regarding whether relief is available to a taxpayer under § 6015(f). If Congress had merely intended the gap-filling APA procedures to apply, it would have been unnecessary to address Tax Court remedies at all. In the tax context, as well as in others, “a precisely drawn, detailed statute pre-empts more general remedies.” Hinck v. United States, 550 U.S. 501, 506, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007) (internal quotations and citations omitted). The extensive legislative history of these provisions demonstrates that the special procedures enacted by Congress displace application of the APA in innocent spouse tax relief cases, and the APA does not apply.[16]
The administrative structure addressing innocent spouse taxpayer also supports the conclusion that the APA does not apply. As we have explained, all claims are first screened by administrative personnel at the CCCISO center. If a claim survives screening, it is transferred to an examiner. If the examiner denies relief, then the taxpayer may appeal to the IRS’s Office of Appeals. There is no formal administrative procedure for a contested case at which the taxpayer may present her case before an administrative law judge. At no time during the process is the taxpayer afforded the right to conduct discovery,' present live testimony under oath, subpoena witnesses for trial, or conduct cross-examination.
Rather, in this statutory scheme, it is before the Tax Court that the taxpayer has the vehicle to conduct discovery, see 26 U.S.C. § 6902(b), subpoena witnesses and documents, 26 U.S.C. § 7456(a)(1), and submit evidence at trial, Tax Ct. R. 181. Absent the availability of the Tax Court processes, an innocent spouse has no means to obtain or compel production of necessary records from the non-innocent spouse. The structure of administrative process indicates that the usual APA procedures do not apply.
*991 2
Even assuming, arguendo, that the APA applies here, the usual exceptions apply so as to permit the Tax Court to consider additional evidence. Although typically APA review of an agency decision is limited to the administrative record, see Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), there are, as the government concedes, exceptions to this general rule. We have acknowledged that a “reviewing court may require supplementation of the administrative record if it is incomplete.” Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir.2005) (citing Camp v. Pitts, 411 U.S. at 142-43, 93 S.Ct. 1241). Though exceptions to the APA’s record rule are to be “narrowly construed and applied,” they can be necessary “to plug holes in the administrative record.” Id.
The ability to supplement the administrative record is particularly important in equitable relief cases, which require a fact-intensive inquiry of sensitive issues that may not come to light during the administrative phase of review.[17] The threshold requirements for innocent spouse relief may present a complicated and contradictory dilemma for the taxpayer. The innocent spouse must show that he or she is ignorant of the cpouse’s tax misdeeds, yet must marshal documentary support to prove it. The taxpayer often has limited or no access to critical records. The innocent taxpayer who has been misled by a spouse often may not understand the full extent or scope of the erring spouse’s misdeeds. Compounding these difficulties is an administrative system where the only opportunity to present a case is through telephonic interviews with an agent in a remote location.
In this case, supplementation of the administrative record through testimony given by Wilson was critical to determining whether the IRS considered all relevant factors in denying her § 6015(f) petition for innocent spouse relief. As the Tax Court noted in its decision, because “[t]here was little information in the administrative record that shed[ ] any light” on the portion of the unpaid liabilities attributable to Wilson, the IRS Appeals Officer attributed 50 percent of the outstanding tax liability to her. Wilson’s testimony before the Tax Court, however, revealed a “lack of business sophistication and limited education” as well as “no understanding” of the nature of her husband’s business scheme. In light of her testimony, the court found the couple’s tax liability “entirely attributable to Lloyd.” Without the trial testimony, the Tax Court would not have had a sufficient record to comply with its duty, under § 6015(e), “to determine the appropriate relief available” to Wilson *992 under § 6015(f). Notably, the Commissioner does not dispute these findings.
This case also demonstrates that restricted access to important documents can be a significant barrier to establishing an adequate administrative record. Although Wilson attempted to comply with the documentation requests made by the IRS appeals officer handling her case, she could not submit a complete set of materials due to her husband’s interference. When she tried to make photocopies of the joint returns for the tax years at issue in this appeal, her husband physically prevented her from leaving the house with the materials. As Wilson’s experience demonstrates, “[a] taxpayer who interacts with the IRS from a position of near-total ignorance of her or his tax filing and payment history, with no control over what was done in her or his name, is at a serious disadvantage.” National Taxpayer Advocate, 2011 Annual Report to Congress 324 (2011).
Many of the taxpayers who seek innocent spouse relief share Wilson’s limited educational background, lack of access to essential documents, and inability to hire counsel.[18] Taxpayers in Wilson’s position may have understandable trouble comprehending, and thus fully complying with, the IRS’s process in considering requests for equitable spouse relief or establishing a complete record with the agency. Allowing the Tax Court to review a supplemented and up-to-date record under these circumstances is entirely consistent with the statutory structure of § 6015 and Congress’s direction that the Tax Court determine the appropriate relief.
Thus, even if the APA applies, the Tax Court appropriately considered additional evidence.
IV
A
The plain language of § 6015(e), as amended, also confirms that the Tax Court should apply a de novo standard of review when considering appeals pursuant to § 6015(f). Section 6015(e) explicitly authorizes the Tax Court to make a “determination” regarding whether relief is available to a taxpayer under § 6015(f). In order “to determine the appropriate relief available,” the Tax Court must review § 6015(f) decisions de novo. There is nothing in § 6015(e) to indicate that the Tax Court should defer to the Commissioner’s prior decisions in § 6015(f) petitions.
The government contends that the appropriate standard of review is dictated not by § 6015(e), but by § 6015(f). As the government argues, the Tax Court can review petitions for relief under § 6015(f) only for an abuse of discretion because the permissive language of § 6015(f) expressly allows the Commissioner to grant or deny tax relief at his discretion. Taxpayers are allowed to “request” relief under § 6015(f), which “the Secretary may” grant. In contrast, the government points out, under § 6015(b) and (c), the taxpayer “elects” relief, which “shall” be granted if certain statutory requirements are met. The government suggests that the clear discretionary authority granted to the IRS under § 6015(f) would be eliminated if the Tax Court is permitted to review § 6015(f) petitions de novo.
The statutory provision that controls the Tax Court’s review of § 6015(f) petitions, however, is not § 6015(f), but § 6015(e). Section 6015(f) addresses only the Secretary’s role in considering petitions for equitable relief. The Tax Court’s role in reviewing requests for relief is dictated *993 solely by § 6015(e), which does not establish mere review of agency action, but explicitly calls for a determination by the Tax Court. This determination occurs either after a taxpayer receives “notice of the Secretary’s final determination of relief’ or six months after a request for equitable relief “is filed or request is made with the Secretary.” § 6015(e)(1)(A). Because § 6015(e) contemplates a situation where the Tax Court may hear a petition for relief under § 6015(f) without any administrative record at all, logic dispels the notion that § 6015(f) appeals to the Tax Court are reviewable only for an abuse of discretion.
As the government concedes, a de novo scope of evidentiary review is incompatible with an abuse of discretion standard. The government points out that “the overarching problem with the Tax Court’s trial de novo approach in Ewing II and Porter I ... is that the court decided that the Commissioner abused his discretion in denying relief based on evidence that was not before him. Such an approach ... is ‘illogical and inappropriate’ ” (citing Ewing v. Comm’r, 122 T.C. at 72 (Chiechi, J., dissenting)). We agree. The Tax Court must be able to compile a de novo record if it is to consider “all the facts and circumstances” when deciding whether a taxpayer is entitled to relief from joint liability under § 6015(f), but it is pointless to do so if it can only review the Commissioner’s denial of equitable relief for an abuse of discretion. The only, way for the Tax Court to proceed de novo when hearing petitions for relief under § 6015(f) is by applying both a de novo standard and scope of review.
Finally, the nature of equitable relief also favors de novo review. Administrative agencies are “creatures of statute, bound to the confines of the statute that created them, and lack the inherent equitable powers that courts possess.” U.S. Fidelity and Guar. Co. v. Lee Invs. LLC, 641 F.3d 1126, 1135 (9th Cir.2011). The award of equitable spouse relief often turns -on credibility, which is best tested in the crucible of trial rather than in a bureaucratic office in which the officer is unlikely even to meet the claimant. In this unique context, de novo review of the agency decision is particularly appropriate.
B
The structure of the innocent taxpayer provisions buttresses the conclusion that a de novo standard of review is appropriate. Indeed, to hold otherwise would result in inconsistent application of the three types of innocent spouse relief available under § 6015.
A jurisdictional grant to the Tax Court “to determine” whether equitable innocent spouse relief is appropriate strongly indicates that the Tax Court should proceed de novo in considering such claims. See Comm’r v. Neal, 557 F.3d at 1276 (comparing statutory language in § 6330(d)(1), which permits a taxpayer to “appeal” an Appeal Officer’s determination to the Tax Court, to “§ 6015(e), which does not use the word ‘appeal’ but instead authorizes the Tax Court to ‘determine’ the appropriate relief.”). In the special context of Tax Court jurisprudence, the word “determine” is frequently associated with de novo review. Under § 7436(a), for instance, the Tax Court is authorized to “determine” whether the Commissioner’s assessment of a taxpayer’s employment status is correct, and legislative reports confirm that such determination is to occur after a trial de novo. See Ewing v. Comm’r, 122 T.C. 32, 38-39 (2004)[19] (citing H.R.Rep. No. 105- *994 148, at 639 (1997); S.Rep. No. 105-33, at 304 (1997); H. Conf. Rep. 105-220, at 734 (1997)). Similarly, the Tax Court has always made “determinations and redeter-minations” regarding overpayments de novo. Porter I, 130 T.C. at 119 (citing O’Dwyer v. Comm’r, 266 F.2d 575, 580 (4th Cir.1959); Greenberg’s Express, Inc. v. Comm’r, 62 T.C. 324, 327-328 (1974); Clapp v.Comm’r, 875 F.2d 1396, 1403 (9th Cir.1989); Jones v. Comm’r, 97 T.C. 7, 18 (1991)). Given the Tax Court’s long “history of conducting trials de novo in other areas where Congress by statute has authorized the Tax Court to make ‘determinations’ or ‘redeterminations,’ ” it can be “reasoned that Congress was well aware of the Tax Court’s well-established interpretation of ‘determine’ when it enacted § 6015.... ” Comm’r v. Neal, 557 F.3d at 1270.
The government argues that “determine” is not a term of art connoting a de novo scope of review and gives several examples where statutory text employs variations of the word “determine” but clearly mandates review on the administrative record. It is true that “determine” does not automatically mandate de novo review whenever it appears in the Tax Code. However, the history of the Tax Court’s application of the word “determine” as it appears in § 6015(e) evidences legislative intent to impose de novo review of stand-alone § 6015(f) petitions to the Tax Court.
Although there was doubt as to whether the Tax Court could review denials of equitable relief under § 6015(f) until 2006, it was always clear that § 6015(e) gave the court jurisdiction over denials of relief in deficiency cases under § 6015(b) and (c). See Comm’r v. Ewing, 439 F.3d at 1013 (“The plain language of the statute clearly indicates that the Tax Court has jurisdiction over a petition only when a deficiency has been asserted and the taxpayer has elected relief under subsection (b) or (c).”). The Tax Court has “always applied a de novo scope and standard of review in determining whether relief is warranted under subsections (b) and (c).” Porter II, 132 T.C. at 210 (citing as an example Alt v. Comm’r, 119 T.C. 306, 313-16, 2002 WL 31828632 (2002), aff'd 101 Fed.Appx. 34 (6th Cir.2004)). Given this history of de novo review in the context of § 6015(b) and (c) petitions for relief, it is significant that in 2006 Congress explicitly amended § 6015(e) to permit the Tax Court to review petitions for relief under subsection (f) without making any change to its direction to “determine the appropriate relief available” in such petitions. See Tax Relief and Health Care Act of 2006 § 408, 120 Stat. at 3062. When Congress decided to keep the word “determine” in § 6015(e), it did so with full awareness of the Tax Court’s history of holding trials de novo in cases arising out of § 6015(b) and (c). Given this history, the Tax Court should apply the same standard of review in all § 6015 cases, regardless of whether they are brought under subsection (b), (c), or (f).
y
The text, structure, and legislative history of § 6015(e) direct the Tax Court to proceed de novo when determining whether a taxpayer is eligible for relief under § 6015(f). The Tax Court therefore did not err in holding a trial de novo and applying a de novo standard of review in this case.
AFFIRMED.

. The Internal Revenue Service ("IRS”) receives approximately 50,000 innocent spouse claims per year. Gen. Accounting Office, Tax Administration: IRS’s Innocent Spouse Program Improved; Balanced Performance Measures Needed 13 (2002) ("2002 GAO Report”). The GAO estimated in 1998 that there were 587,000 individuals potentially eligible for innocent spouse relief, although it conceded that the actual number was probably substantially lower. Gen. Accounting Office, Innocent Spouse: Alternatives for Improving Innocent Spouse Relief 6 (1998).

. Stephanie Hunter McMahon, An Empirical Study of Innocent Spouse Relief: Do Courts Implement Congress’s Legislative Intent?, 12 Fla. Tax Rev. 629, 632 (2012); Jerome Bori-son, Alice Through a Very Dark and Confusing Looking Glass: Getting Equity from the Tax Court in Innocent Spouse Cases, 30 Fam. L.Q. 123, 125 (1996).

. National Taxpayer Advocate, 2011 Annual Report to Congress 323-335, 455 (2011). (In 1996, Congress created the independent Office of Taxpayer Advocate, headed by a National Taxpayer Advocate appointed by the Secretary of the Treasury Secretary. Taxpayer Bill of Rights 2, Pub.L. No. 104-168, § 101, 110 Stat. 1452, 1453-56 (1996). The National Taxpayer Advocate is required to submit an annual report to Congress. Id. at § 101.)

. National Taxpayer Advocate, 2005 Annual Report to Congress 422 (2005) ("65 percent of the taxpayers who request innocent spouse ... relief make less than $30,000 per year. Ninety percent are women. Thirty-four percent are single filers and another 51 percent file as 'head of household,’ meaning they are unmarried and maintain a home for children or certain other persons.” (footnotes omitted)).

. Revenue Act of 1918, ch. 18, § 223, 40 Stat. 1057, 1074.

. Revenue Act of 1921, ch. 136, § 223(b)(2), 42 Stat. 227, 250.

. Gummey v. Comm’r, 26 B.T.A. 894, 895, 896 (1932).

. Revenue Act of 1938, ch. 289, § 51(b), 52 Stat. 447, 476 (1938).

. Revenue Act of 1948, Pub.L. No. 471, ch. 168, 62 Stat. 110 (1948). The 1948 Act equalized tax treatment between married couples *983 in states with community property laws and those who resided in separate property states. This equitable fix introduced the so called "marriage bonus” into the tax scheme.

. See also McMahon, 12 Fla. Tax Rev. at 636-37 (defining duress in this context as "a constraint of will so strong that it makes a person reasonably unable to resist a demand to sign.”).

. Taxpayer Bill of Rights II, Pub.L. No. 104-168, § 401, 110 Stat. 1452, 1469 (1996).

. Subsection (b) of § 6015 grants relief to taxpayers when: (1) "there is an understatement of tax attributable to erroneous items of one individual filing the joint return”; (2) the taxpayer establishes that "he or she did not know, and had no reason to know” about the understatement; (3) the totality of the circumstances indicates that it is inequitable to hold the taxpayer liable for the deficiency; and (4) the taxpayer files for innocent spouse relief within two years of the date on which the Secretary begins collection activities. 26 U.S.C. § 6015(b). Subsection (c) of § 6015, on the other hand, allows taxpayers who are no longer married, legally separated, or not living together to limit their liability for deficiencies attributable to their spouse. 26 U.S.C. § 6015(c).

. Section 6015(f) provides:
(f) Equitable relief.—-Under procedures prescribed by the Secretary, if—
(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
(2) relief is not available to such individual under subsection (b) or (c),
the Secretary may relieve such individual of such liability.
26 U.S.C. § 6015(f).

. Section 6015(e) provides, in pertinent part:
(e) Petition for review by Tax Court.—
(1) In general.—In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)—
(A) In general.—In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed-—
(i) at any time after the earlier of—
(I) the date the Secretary mails, by certified or registered mail to the taxpayer’s last known address, notice of the Secretary’s final determination of relief available to the individual, or
(II) the date which is 6 months after the date such election is filed or request is made with the Secretary, and
(ii) not later than the close of the 90th day after the date described in clause (0(1).
(4) Notice to other spouse.—The Tax Court shall establish rules which provide the individual filing a joint return but not making the election under subsection (b) or (c) or the request for equitable relief under subsection (f) with adequate notice and an opportunity to become a party or proceeding under either such subsection.

. The proceedings were then paused due to uncertainty regarding the Tax Court's jurisdiction to hear § 6015(f) petitions for relief. Proceedings resumed after Congress, as previously noted, amended § 6015 to explicitly grant the tax court jurisdiction to review § 6015(f) petitions in 2006. See Tax Relief and Health Care Act of 2006, Pub.L. No. 109-432, § 408, 120 Stat. 2922.

. Further, although we need not reach the question here, there is considerable doubt as to whether the APA applies to the Tax Court at all. The Tax Court has held that the APA does not govern its proceedings. The Fourth Circuit has agreed. See O’Dwyer v. Comm’r, 266 F.2d 575, 580 (4th Cir.1959) ("[T]he Tax Court is not subject to the Administrative Procedure Act.”). The Eighth Circuit has held to the contrary as to review under § 6330(d). Robinette v. Comm'r, 439 F.3d 455, 459-60 & n. 4 (8th Cir.2006).

. Although it is not a factor in this case, domestic abuse is a serious problem in innocent spouse taxpayer cases. As the National Taxpayer Advocate reported to Congress last year, facts that suggest a purported innocent spouse was victimized by the other spouse "have real consequences for tax administration,” yet often are not sufficiently recognized or addressed by the IRS. National Taxpayer Advocate, 2011 Annual Report to Congress 323 (2011). Innocent spouse relief has been identified as "perhaps the most common situation in which the problem of abuse comes to IRS attention,” yet the agency’s "[d]ocument-[o]ri-ented [s]ystems and [e]xpectations can be [obstacles to [rjelief for [v]ictims of [d]omestic [violence and [ajbuse” when they "cause employees to overlook the availability of reliable information that would lead to the correct resolution of tax matters.” Id. at 325, 327, 323. For instance, in Stephenson v. Commissioner, the IRS denied a taxpayer who alleged she was a victim of spousal abuse equitable innocent spouse relief because she lacked documentary support of the abuse. T.C. Memo. 2011-16 at 25 (Jan. 20, 2011). The Tax Court granted relief, however, after finding that the taxpayer “credibly testified to specific allegations of abuse.” Id.

. Over half of all innocent spouse relief cases, for instance, involve pro se litigants. National Taxpayer Advocate, 2011 Annual Report to Congress 589 (2011).

. As previously noted, this case was overturned by Commissioner v. Ewing, 439 F.3d 1009 (9th Cir.2006), which was in turn superseded by statute. See Tax Relief and Health Care Act of 2006, Pub.L. No. 109-432, § 408, 120 Stat. 2922.