T.C. Summary Opinion 2015-46

UNITED STATES TAX COURT

PAMELA M. RUNKEL, n.k.a. PAMELA ANGLIN, Petitioner, AND
CLIFFORD BURTON RUNKEL, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28895-13S.                     Filed August 6, 2015.

Pamela Anglin, pro se.

Clifford Burton Runkel, pro se.

Adam J. Smith, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 in effect when the petition was filed.[1]  Pursuant to section 7463(b),

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined that petitioner is not entitled to relief from joint and several liability for the taxable year 2011.  Petitioner filed with the Court a timely petition for review of respondent's determination.  Intervenor, petitioner's former spouse, filed a timely notice of intervention pursuant to section 6015(e)(4).  The sole issue for decision is whether petitioner qualifies for spousal relief under section 6015(f).

## Background

Some of the facts have been stipulated and are so found.  The stipulation of facts, the supplemental stipulation of facts, and the accompanying exhibits are incorporated herein by this reference.  Petitioner resided in Florida at the time the petition was filed.

## I. Petitioner's Background

Petitioner earned a high school equivalency degree and completed some courses at the junior college level.  Over the years she has worked as a

---

[1](...continued)
Revenue Code, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts are rounded to the nearest dollar.

bookkeeper, first for Great White Shark Enterprises and later for a construction firm. At the time of trial petitioner was 60 years old.

## II. Intervenor's Background

Intervenor earned a mechanical engineering degree from the University of South Alabama. For many years he was a partner at Sklow & Runkel Consulting Engineers (Sklow & Runkel), a successful electrical engineering firm. At the time of trial intervenor was 57 years old.

## III. Marriage, Separation, and Divorce

Petitioner first met intervenor in 1999, and they married in August 2002. As discussed in greater detail below, petitioner and intervenor separated in the summer of 2012, and they divorced in early 2013.

## IV. Real Estate Holdings

When petitioner first met intervenor in 1999, she was living with her daughter (from a previous marriage) in a residence that she owned in Jupiter, Florida (Jupiter residence). Intervenor lived with petitioner at the Jupiter residence for about one year.

In 2001 petitioner and intervenor jointly purchased a residence in Vero Beach, Florida (Vero Beach residence), for $220,000. They made a $20,000

downpayment on the property and obtained a mortgage loan to pay the balance. The couple paid off the mortgage within about eight years.

Petitioner's daughter continued to live in the Jupiter residence while she attended college. After her daughter moved out petitioner converted the Jupiter residence to a rental property. In 2009 petitioner and intervenor drew $66,000 against a line of credit on the Vero Beach residence and used the funds to retire the mortgage on the Jupiter residence.

While he was married to petitioner, intervenor owned a residential rental property in Palm Bay, Florida (Palm Bay residence).

V. Household Finances

While she was married to intervenor, petitioner maintained a joint checking account with her daughter. Intervenor maintained separate bank accounts at Space Coast Credit Union during the marriage (Space Coast accounts).

Initially, intervenor and petitioner shared monthly household expenses at the Vero Beach residence. Intervenor made the mortgage payments, and petitioner paid other expenses such as utility charges.

In 2007 petitioner lost her job with a local homebuilder. At that time intervenor began to pay all of the household expenses. He also added petitioner's name to his Space Coast accounts. Petitioner admitted that she used a Space Coast

debit card liberally and, because intervenor always said there was "plenty of money", she did not monitor balances in the account or review account statements.

The record includes Space Coast account statements for 2011. The statements show deposits and offsetting cash withdrawals and expenditures totaling approximately $126,000 for the year. The statements do not distinguish between cash withdrawals and expenditures made by petitioner and those made by intervenor.

VI. Deterioration of the Marriage and Physical Abuse

Petitioner and intervenor enjoyed a happy marriage for several years. Eventually, however, serious strains in the marriage began to emerge. On several occasions over a period of years, intervenor physically assaulted petitioner. On at least two occasions petitioner required medical care after intervenor pushed or struck her. After a violent incident during the holidays in December 2008, petitioner was interviewed by local law enforcement officers and was encouraged to file a criminal complaint against intervenor--but she declined to do so.

Toward the end of 2011 intervenor began staying out until the early morning hours, and petitioner noticed that he was not paying household bills on time. Petitioner suspected that he was involved in an extramarital affair. By April 2012 petitioner was so concerned that she consulted an attorney. About that same

time she obtained Space Coast monthly bank statements and discovered that intervenor was frequently withdrawing large amounts of cash, often at local gambling establishments.

In mid-June 2012 petitioner notified intervenor that she had filed suit seeking a divorce. Although petitioner and intervenor initially attempted to continue to reside in the Vero Beach residence, albeit on separate sides of the residence, serious tensions led intervenor to move out about a month later.

In January 2013 the Circuit Court of the Nineteenth Judicial Circuit in and for Indian River County, Florida (circuit court), granted petitioner a final judgment of injunction for protection against domestic violence. The circuit court found that petitioner was a victim of domestic violence by intervenor and barred intervenor from having contact with her. Petitioner subsequently obtained a permanent domestic violence injunction against intervenor.

VII. Tax Returns

A. In General

Petitioner and intervenor routinely filed joint Federal income tax returns. Intervenor prepared the tax returns and paid any tax that was owing. Petitioner was aware that intervenor had not made quarterly payments of income tax in respect of the distributions that he had received from Skow & Runkel. She was

also aware that he had used various sources of funds to pay the couple's Federal income tax, including lines of credit on the Vero Beach and the Palm Bay residences and additional draws from Skow & Runkel. Petitioner testified that she did not review the tax returns in detail and that she never had any reason to doubt that intervenor would pay any tax that was due.

B. 2011 Tax Return

On May 28, 2012, intervenor prepared and electronically filed the couple's joint Federal income tax return for 2011. Petitioner and intervenor reported wage income of $13,989 and $60,000, respectively. Skow & Runkel issued a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., to intervenor for 2011 reporting that his share of the firm's ordinary business income was $104,963 and that he had received a distribution of $70,000. Intervenor reported net income of $91,123 from Skow & Runkel.

The couple reported total tax of $33,714, a credit for income tax withholding of $8,082, and tax due of $25,845. Petitioner testified that intervenor informed her at the time he presented the return to her for review that he would take a draw from Skow & Runkel to pay the tax. Intervenor contradicted petitioner and testified that when she inquired how he intended to pay the tax he replied that he would "figure it out".

Intervenor did not remit payment to the Internal Revenue Service (IRS) when he filed the tax return for 2011. A few weeks later, petitioner filed for divorce and a dispute arose as to how the couple would pay the tax bill. Intervenor testified that he considered the tax bill a marital debt, and he concluded that marital assets should be used to pay it. In this regard he attempted to refinance the mortgage on the Vero Beach residence to raise the funds needed to pay the tax. Petitioner, however, did not agree to the refinancing plan and insisted that intervenor should take a draw from Skow & Runkel to pay the tax.

Respondent subsequently issued to petitioner and intervenor a notice of intent to levy and filed a notice of Federal tax lien in respect of the tax due for 2011. At the time of the trial petitioner and intervenor owed tax, penalties, and interest totaling $34,528 for 2011.

VIII. Dissolution of Marriage and Settlement Agreement

On February 1, 2013, the circuit court entered a final judgment of dissolution of marriage. In conjunction with their divorce, petitioner and intervenor entered into a marital settlement agreement (settlement agreement).

The settlement agreement provided for a division of property as follows. Intervenor received a 2010 Toyota Prius, a 2000 Dodge Durango, a 2000 Wellcraft boat, and ownership of the Palm Bay residence. He was also required to pay

outstanding property tax of $2,318 and $2,231 that had been assessed on the Jupiter and Vero Beach residences, respectively. Petitioner received a 2012 Toyota Rav4, the Vero Beach residence, the Jupiter residence, and a vacation timeshare.

The settlement agreement stated in relevant part:

The Parties acknowledge that there is a jointly named IRS liability for the 2011 year. It is believed that there shall be a lien placed on * * * [the Vero Beach residence] (if it does not already exist) in the very near future. The Wife understands that the Husband's conveyance of the property located at * * * Vero Beach, FL is subject to said lien.

The document further stated that "[w]ithin 18 months, the Wife agrees to make best efforts to refinance the mortgage (and any liens associated with the property) to remove the Husband's name."

On January 9, 2015, the circuit court entered an order granting intervenor's motion for contempt and motion to compel, requiring petitioner to make at least three applications to lenders to refinance the mortgage on the Vero Beach residence. The order states in relevant part:

The former wife argues that she shouldn't be required to pay the IRS Lien that is now on the house and which was disclosed in the Marital Settlement Agreement as part of her refinancing of the home. The Marital Settlement Agreement is clear. The former wife clearly understood that there was either a tax lien on the property or that there would shortly be a tax lien on the property at the time she obtained title to the property and agreed to make her best efforts to

refinance the mortgage. She cannot now come to court and ask that she not be required to pay this lien as part of any refinancing. * * *

 *       *       *       *       *       *       *

As agreed to in the Marital Settlement Agreement refinance means paying off all existing lien[s] against the property.

IX.  Petitioner's Request for Spousal Relief

In December 2012 petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief, for 2011. Shortly thereafter, intervenor submitted to respondent a Form 12508, Questionnaire for Non-Requesting Spouse, alleging, among other things, that he had attempted to obtain a home equity loan to pay the 2011 tax liability and that petitioner had impeded his efforts.

In April 2013 the IRS Cincinnati Centralized Innocent Spouse Operation (CCISO) initially considered petitioner's request for spousal relief and determined that she was entitled to partial relief under section 6015(f) of $24,652. Specifically, CCISO allocated liability for most of the unpaid tax to intervenor on the theory that petitioner had paid withholding tax sufficient to cover most of the tax due on the items of income reported on the couple's joint return that were attributable to her.[2]  Intervenor subsequently submitted to respondent a Form

---

[2] Petitioner earned wages of $13,989 in 2011 and had Federal income tax withholding of $1,028.

12509, Statement of Disagreement. On September 9, 2013, respondent issued a final determination denying petitioner's request for relief.

## X. Petitioner's Financial Statement

Petitioner estimated that the value of the Jupiter residence is $110,000. It is not subject to a mortgage, and she receives monthly net rental income of $700 from it. She estimates that the Vero Beach residence is worth between $169,000 and $200,000 and is subject to a $106,000 mortgage.

Petitioner is currently employed and earns $42,000 annually. She does not have any dependents, and she owns a retirement account with a current value of approximately $26,000. Petitioner estimates that her monthly expenses exceed her monthly income by about $450.

## XI. Compliance With Federal Tax Laws

Petitioner filed her Federal income tax return for 2012 in December 2013, and she received a $2 refund. Although intervenor questioned whether petitioner was obliged to report alimony income for 2012, respondent has not examined her tax return. Respondent reviewed petitioner's wage and income transcript for 2013 and concedes that she was not obliged to file a tax return for that year. It is respondent's position that petitioner is in compliance with Federal income tax laws for all taxable years after 2011.

XII. Petitioner's Mental/Physical Health

Petitioner testified that at the time the tax return for 2011 was filed and when she filed her claim for spousal relief in December 2012, intervenor's behavior was erratic and she was living in fear that he would harm her.

Discussion

I. Relief From Joint and Several Liability

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). If certain requirements are met, however, an individual may be relieved of joint and several liability under section 6015.

The Court applies a de novo scope and standard of review in deciding whether a taxpayer is entitled to relief under section 6015. See Wilson v. Commissioner, 705 F.3d 980, 993-994 (9th Cir. 2013), aff'g T.C. Memo. 2010-134; Porter v. Commissioner, 132 T.C. 203, 210 (2009). Except as otherwise provided in section 6015, the taxpayer (requesting spouse) bears the burden of proving entitlement to relief. Rule 142(a); Porter v. Commissioner, 132 T.C. at 210; Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

Three forms of relief are available under section 6015. In general, subsection (b) provides full or apportioned relief from joint and several liability for understatements of tax on a return, subsection (c) provides apportioned relief in respect of a deficiency to taxpayers who are divorced or separated, and in certain circumstances subsection (f) provides equitable relief from joint and several liability if relief is not available under subsection (b) or (c). Inasmuch as there is no understatement or tax deficiency for the year in issue, we consider only whether petitioner is entitled to equitable relief under section 6015(f).

Section 6015(f) grants the Commissioner discretion to relieve an individual from joint and several liability if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either). The Commissioner has prescribed guidelines in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, that are considered in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency.[3] Although the Court consults these guidelines when

---

[3]Rev. Proc. 2013-34, sec. 7, 2013-43 I.R.B. 397, 403, makes the guidelines effective for requests for relief filed on or after September 16, 2013, and requests for equitable relief pending on September 16, 2013, whether before the IRS, the Office of Appeals, or a Federal court.

reviewing the Commissioner's denial of relief, see Washington v. Commissioner, 120 T.C. 137, 147-152 (2003), we are not bound by them inasmuch as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances, see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210; Hudgins v. Commissioner, T.C. Memo. 2012-260, at *39-*40.

## II.  Threshold Conditions

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400, sets forth seven threshold conditions that must be satisfied before the Commissioner will consider a request for equitable relief under section 6015(f).  Petitioner satisfies the seven threshold conditions.[4]

## III.  Streamlined Determination

Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, sets forth elements that a requesting spouse must satisfy to qualify for a streamlined determination

---

[4]The seventh requirement states that "[t]he income tax liability from which the requesting spouse seeks relief is attributable (either in full or in part) to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income", unless a specific exception applies.  Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399-400.  The record shows that, after properly allocating items of income and tax withholding credits to petitioner and intervenor, respectively, the portion of the tax underpayment attributable to petitioner is $980.  On this record we conclude that petitioner is not entitled to spousal relief in respect of $980 of the underpayment which is attributable to her.

under section 6015(f).[5]  As discussed below, petitioner does not qualify for

streamlined relief because she will not suffer economic hardship if relief is not

granted.

A requesting spouse will suffer economic hardship if payment of part or all

of the tax liability "will cause the requesting spouse to be unable to pay reasonable

basic living expenses."  Id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401; see sec.

301.6343-1(b)(4)(i), Proced. & Admin. Regs.  The determination as to what

constitutes a reasonable amount for basic living expenses may vary according to

the circumstances of the individual taxpayer but will not include the maintenance

of an affluent or luxurious lifestyle.  Sec. 301.364-1(b)(4)(i), Proced. & Admin.

Regs.  The requesting spouse must introduce evidence at trial supporting her claim

that she will suffer economic hardship.  Johnson v. Commissioner, T.C. Memo.

2014-240, at *15 (citing Pullins v. Commissioner, 136 T.C. at 446-447).

_____

[5]Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, as is relevant here, permits relief if all the following elements are satisfied:  (1) on the date the IRS makes its determination, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, is a widow or widower and is not an heir to the nonrequesting spouse's estate that would have sufficient assets to pay the tax liability, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the IRS makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) on the date the joint return was filed, the requesting spouse did not know or have reason to know the nonrequesting spouse would not or could not pay the underpayment of tax reported on the joint return.

The payment of the tax due, in whole or in part, would not cause petitioner to suffer economic hardship. At the time of trial petitioner was employed full time earning $42,000 annually, and she has no dependents. She also receives net monthly rental income of $700 from the Jupiter residence, a property that is unencumbered and which she values at $110,000. In the light of the other assets that she owns, including the Vero Beach residence, we reject the proposition that payment of the tax liability would leave petitioner unable to pay reasonable basic living expenses.

IV. Facts and Circumstances Analysis

Where a requesting spouse meets the threshold conditions for relief but fails to qualify for streamlined relief, the Commissioner may nevertheless grant relief after considering the following nonexclusive list of factors set forth in Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400-403: (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse will suffer economic hardship if relief is not granted; (3) whether on the date the joint return was filed the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not or could not pay the underpayment of tax reported; (4) whether the requesting or nonrequesting spouse has a legal obligation to pay the tax liability pursuant to a decree of divorce or

other agreement; (5) whether the requesting spouse received a significant benefit from the unpaid income tax liability; and (6) whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws for the taxable years following the taxable year(s) to which the request for relief relates. Two additional factors that the Commissioner may consider in favor of granting relief are whether: (1) the nonrequesting spouse abused the requesting spouse, and (2) the requesting spouse was in poor mental or physical health at the time the joint return was filed or when the requesting spouse requested relief. See id. sec. 4.03(2)(c)(iv), (g).[6]

1. Marital Status

If the requesting spouse is no longer married to the nonrequesting spouse as of the date that the IRS makes its determination, this factor weighs in favor of relief. Id. sec. 4.03(2)(a). Petitioner and intervenor were divorced before the IRS made its determination denying petitioner spousal relief. Therefore, this factor weighs in favor of relief.

---

[6]The revenue procedure recognizes that the issue of abuse can be relevant to the analysis of various factors and can negate the presence of certain factors. Rev. Proc. 2013-34, sec. 3.01, 2013-43 I.R.B. at 398.

## 2. Economic Hardship

As discussed above, denying petitioner spousal relief will not cause her to suffer economic hardship. In accordance with Rev. Proc. 2013-34, sec. 4.03(2)(b), this factor is neutral.

## 3. Knowledge or Reason To Know

In the case of an underpayment of tax due, this factor turns on whether, as of the date the return was filed or the date the requesting spouse reasonably believed the return was filed, the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax at that time or within a reasonable period after the filing of the return. Id. sec. 4.03(2)(c)(ii). Petitioner testified credibly that she believed intervenor would take a draw from Skow & Runkel to pay the tax due for 2011. Considering all of the circumstances, including intervenor's physical abuse of petitioner, we conclude that petitioner reasonably believed, at the time the return was filed, that intervenor would pay the tax due within a reasonable period. This factor weighs in favor of relief.

## 4. Legal Obligation

This factor will weigh against relief if the requesting spouse has the sole legal obligation to pay the outstanding tax liability pursuant to a divorce decree or other legally binding agreement. Id. sec. 4.03(2)(d). As previously discussed, the

circuit court's order entered January 9, 2015, clarifies that petitioner has the sole legal obligation to pay the outstanding tax liability for 2011. This factor weighs against relief.

### 5. Significant Benefit

This factor calls for an evaluation of whether the requesting spouse received a significant benefit, beyond normal support, from the underpayment of tax. Id. sec. 4.03(2)(e); see sec. 1.6015-2(d), Income Tax Regs. Normal support is measured by the circumstances of the particular parties. Porter v. Commissioner, 132 T.C. at 212.

Space Coast monthly bank statements show substantial deposits to the couple's joint account and equally substantial expenditures (reflected as debits to the account) and cash withdrawals throughout 2011. Suffice it to say that both petitioner and intervenor spent freely and enjoyed costly, if not lavish, vacations. Nevertheless, considering that intervenor controlled the household finances and, specifically, tax payments, we conclude that this factor is neutral.

### 6. Compliance With Tax Laws

If the requesting spouse makes a good-faith effort to comply with the income tax laws in taxable years following the taxable year to which the request for relief relates, this factor will weigh in favor of relief. Rev. Proc. 2013-34, sec.

4.03(2)(f). We find that petitioner was in compliance with the income tax laws following her divorce from intervenor. This factor weighs in favor of relief.

### 7. Mental or Physical Health

This factor will weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the relevant return was filed or at the time the spouse requested relief. Id. sec. 4.03(2)(g). If the requesting spouse was in neither poor physical nor poor mental health, then this factor is neutral. Id.

At the time petitioner submitted her request for spousal relief, she was in fear that intervenor would harm her and was in the process of obtaining an injunction against him. Considering intervenor's history of physical abuse of petitioner, we conclude that she was in poor mental health during the period in question and this factor weighs in favor of relief.

## V. Conclusion

As the preceding discussion shows, there are several factors for spousal relief, one factor against relief, and two factors that are neutral. The Court is sympathetic to petitioner's position in the light of the physical abuse she endured at the hands of intervenor. Nevertheless, the circuit court, which was fully aware of intervenor's domestic abuse, concluded that petitioner had agreed to pay the 2011 tax liability as part of the division of the couple's marital property. After

weighing all the factors, and considering all of the facts and circumstances, we conclude that it would be equitable to grant petitioner partial spousal relief. Specifically, we conclude that petitioner is entitled to spousal relief under section 6015(f) of $12,000 or roughly one-third of the 2011 tax liability at the time of trial.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.