**FEDERAL ENERGY REGULATORY COMMISSION, Plaintiff,**

**v.**

**BARCLAYS BANK PLC; Daniel Brin; Scott Connelly; Karen Levine; and Ryan Smith, Defendants.**

No. 2:13–cv–2093 TLN DB

United States District Court, E.D. California.

Signed 03/28/2017

Filed 03/30/2017

immediate payment of benefits would not be appropriate at this time.

---

Maria Cristina Melendez, Wesley James Heath, Andrew Tamayo, David A. Applebaum, Emily Catherine Scruggs, Federal Energy Regulatory Commission, Washington, DC, for Plaintiff.

Donna M. Byrne, PHV, John N. Estes, III, Skadden, Arps, Slate, Meagher and Flom LLP, Jodi Avergun, PHV, Paul J. Pantano, Jr., Cadwalader, Wickersham and Taft LLP, Dan M. Berkovitz, PHV, Heather Zachary, PHV, Jonathan G. Cedarbaum, PHV, Seth Paul Waxman, PHV, Wilmer Cutler Pickering Hale and Dorr LLP, Todd Mullins, PHV, McGuire Woods LLP, Daren F. Stanaway, PHV, Elizabeth L. Martin, PHV, Michael L. Spafford, PHV, Victoria L.T. Earls, PHV, Paul Hastings, LLP, Washington, DC, Jack Patrick DiCanio, Skadden, Arps, Slate, Meagher & Flom, LLP, Palo Alto, CA, Jason M. Halper, Gregory Markel, PHV, Cadwalader Wickersham & Taft LLP, Jay B. Kasner,

PHV, Boris Bershteyn, Steven R. Glaser, PHV, Skadden Arps Slate Meagher and Flom LLP, Allison Charney, PHV, McGuireWoods, LLP, New York, NY, Thomas J. Nolan, Skadden, Arps, Slate, Meagher & Flom LLP, Leslie M. Werlin, McGuireWoods LLP, Los Angeles, CA, Mark C. Kalpin, PHV, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, Patrick Fitzgerald, PHV, Skadden Arps Slate Meagher & Flom, LLP, Chicago, IL, Holly A. House, Paul Hastings LLP, San Francisco, CA, for Defendants.

### ORDER

Troy L. Nunley, United States District Judge

Plaintiff Federal Energy Regulatory Commission ("FERC"), has filed this action, seeking affirmance of its administrative Order Assessing Civil Penalties ("Assessment Order") against Defendants. ECF No. 1 ("Petition"). In its Assessment Order, FERC states that Barclays Bank PLC ("Barclays") and four individuals violated the anti-manipulation provisions of the Federal Power Act ("FPA"), 16 U.S.C. § 824v(a), and FERC's Anti–Manipulation Rule, 18 C.F.R. 1c.1. Administrative Record ("AR") 16–66.[1] The Assessment Order also assessed penalties and disgorgements against Defendants totaling $487.9 million. AR 84–85.

### I. THE CURRENT MOTION

Pending before the Court is FERC's Motion to Affirm Civil Penalties. ECF No. 125. The parties have fully briefed the motion. See ECF No. 125 (motion), 136–54 (Defendants' opposition briefing and decla-

rations), 166 (reply). The matter came on for hearing on February 9, 2017, at which time the parties' responded to specific questions put to them by the Court. See ECF No. 186.

For the reasons that follow, the Court concludes, in agreement with every other federal court that has expressly addressed this issue, that Defendants are entitled to conduct discovery under the Federal Rules of Civil Procedure. See FERC v. Maxim Power Corp., 196 F.Supp.3d 181 (D. Mass. 2016); FERC v. City Power Marketing, LLC, 199 F.Supp.3d 218 (D.D.C. 2016); FERC v. Silkman, 233 F.Supp.3d 201, 2017 WL 374697 (D. Me. 2017); FERC v. ETRACOM LLC, 2017 WL ——, 2017 U.S. Dist. LEXIS 33430 (E.D. Cal. 2017). Accordingly, the Motion To Affirm will be denied without prejudice to its renewal as a dispositive motion at an appropriate time.

### II. PROCEDURAL HISTORY

On October 9, 2013, FERC commenced this action by filing its "Petition" in this Court, referring to itself as "Petitioner" and Barclays and the individuals as "Respondents." ECF No. 1. The Court will refer to FERC as the "Plaintiff" and to Barclays and the individuals as "Defendants."

On May 22, 2015, the Court denied Defendants' motions to transfer venue of this case to the Southern District of New York, or to dismiss (in whole or in part) on grounds of lack of jurisdiction, failure to state a claim, or statute of limitations. ECF No. 88.[2] An overview of the alleged manipulation is set forth in that order.

---

1. On November 2, 2015, FERC filed a "Notice of Lodging Administrative Record." ECF No. 115 (AR 1–8,488). The Court notes Defendants' objection to calling this an "Administrative Record." See ECF No. 97 ("Amended Joint Report") at 23 n.8. The Court will refer to these documents as the "Administrative Record" (or "AR") for ease of identification,

only. As discussed more fully below, the Court does not mean by this reference to accord to these documents the status of a formal agency administrative record.

2. FERC v. Barclays Bank PLC, 105 F.Supp.3d 1121 (E.D. Cal. 2015).

From the beginning of this litigation, the parties have sparred over whether or not the Court should permit the parties to conduct discovery under the Federal Rules of Civil Procedure. See ECF Nos. 44 (Defendants' motion to dismiss), 52 (Joint Report re Fed. R. Civ. P. 26(f)), 101 (Defendants' briefing on bifurcation), 103 (FERC's briefing on bifurcation), 118 (Defendants' motion for discovery).

## III. ADMINISTRATIVE HISTORY

### A. FERC's Authority

In 2006, acting under the authority granted it by 16 U.S.C. § 824v(a), FERC promulgated its Anti–Manipulation Rule, 18 C.F.R. § ("FERC Rule") 1c.2. 71 Fed. Reg. 4244 (January 26, 2006). Broadly speaking, the rule prohibits fraudulent practices "in connection with the purchase or sale of electric energy or the purchase or sale of transmission services subject to the jurisdiction of the Commission." FERC Rule 1c.2(a); see Simon v. KeySpan Corp., 694 F.3d 196, 207 (2d Cir. 2012) (the rule bars "fraud or deceit in connection with the sale of energy"), cert. de-

nied, —— U.S. ——, 133 S.Ct. 1998, 185 L.Ed.2d 866 (2013).

### B. Investigation

In July 2007, FERC's Office of Enforcement staff ("Enforcement") commenced a preliminary investigation into allegations of "manipulative trading by Barclays in physical electricity markets in the western U.S.," and notified Barclays that it was doing so. Petition ¶¶ 34, 35;[3] AR 6461 (FERC letter to Barclays).[4] On October 2, 2008, FERC authorized Enforcement to commence a "formal investigation" of Defendants, thus granting Enforcement the power to obtain testimony and other evidence through compulsory process. AR 8, 6647–48.[5]

### C. Preliminary Findings & Responses

On June 10, 2011, Enforcement issued Preliminary Findings Letters to Defendants stating that it had preliminarily concluded that Defendants had engaged in manipulative activity in violation of the Anti–Manipulation Rule. AR 8, 6022–301.[6] The letters invited Defendants to respond with any additional information or rebuttals before Enforcement made a recommendation to FERC.[7] See AR 6022–301.

---

**3.** According to the Petition, electricity products can be "either physical or financial." Petition at 5 ¶ 21. "Physical products involved the obligation to deliver or receive physical electricity at a particular location during a particular time." Id. "Unlike physical positions, financial positions did not entail physical obligations to deliver or receive electricity. Rather, financial positions, including the fixed-for-floating financial swap ('financial swap') commonly traded by Barclays, were financially settled through an exchange of payments." Id. at 7 ¶ 26.

**4.** See 18 C.F.R. § 1b.1(b) ("preliminary investigation" definition); Enforcement of Statutes, Regulations & Orders ("2008 Statement"), 123 FERC 61156, 62012 ¶ 26 (2008) ("[i]f ... staff determines that an investigation should be opened, it will notify the subject of that fact").

**5.** See 18 C.F.R. § 1b.1(a) ("formal investigation" definition); 2008 Statement, 123 FERC

at 62012 n.18 ("staff can conduct a preliminary investigation or, if compulsory process is required, seek an order from the Commission commencing a formal investigation").

**6.** See Enforcement of Statutes, Regulations, and Orders ("2009 Statement"), 129 FERC 61247, 62337 ¶ 2 (2009) ("[i]f staff believes the subject may have violated one or more Commission requirements, it seeks authorization from the Director of the Office of Enforcement to provide a letter to the subject that sets forth staff's preliminary findings and the facts and reasons in support of those findings").

**7.** Although Defendants were invited to provide "additional information," the process they were operating under gave them no authority to compel the production of evidence or testimony. Such authority was granted only to FERC and its staff. See 18 C.F.R. § 1b.13 (FERC's members and investigating

On August 29 & 30, 2011, Defendants responded to the Preliminary Findings Letters. AR 8.[8]

### D. Notice of Alleged Violations and Rule 1b.19 Notice & Responses

On April 5, 2012, Enforcement issued a "Staff Notice of Alleged Violations." AR 8, 6663.[9] It appears that settlement discussions ensued, but the matter was not resolved. See AR 94.[10]

On May 3, 2012, Enforcement provided Defendants a FERC Rule 1b.19 letter, notifying Defendants of its intent to recommend that FERC issue an Order To Show Cause why FERC should not institute an enforcement action against Defendants seeking penalties and disgorgements. AR 8, 6371–85; see FERC Rule 1b.19.[11] The FERC Rule 1b.19 letters invited Defendants to respond to the 1b.19 letter, advising that they could address any matter they wanted FERC to consider, and that they could provide additional evidence. See AR 6371–85. On June 11, 2012, Defendants responded to the FERC Rule 1b.19 letters. AR 8.[12]

### E. Staff Report & Order To Show Cause

Enforcement compiled a Staff Report (undated), that "concluded that Barclays Bank PLC (Barclays) and its individual traders manipulated the electricity markets in and around California from November 2006 to December 2008 in violation of 18 C.F.R. § 1c.2 (2012) (Anti–Manipulation Rule or 1c.2)." AR 90–158 ("Staff Report"). Specifically:

> Enforcement determined Respondents engaged in a coordinated scheme . . . to take the physical positions they had built and liquidate them in the cash markets—generally at a loss—to impact the ICE daily index settlements to benefit Barclays' related financial positions that settled against those indices.

Petition at 9 ¶ 36; AR 92.

On October 31, 2012, FERC directed Defendants to show cause why they should not be found to have violated 16 U.S.C. § 824v(a) and the Anti–Manipulation Rule, and why they should not be assessed civil penalties and disgorgements. AR 86–89. The Staff Report was attached as an exhibit.

The OSC further directed Defendants to elect whether they would proceed by "(a) an administrative hearing before an Administrative Law Judge (ALJ) at the Commission prior to the assessment of a penalty under section 31(d)(2), or (b) an immediate penalty assessment by the

---

officers "may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, contracts, agreements or other records relevant or material to the investigation").

**8.** See AR 199–492 (Barclays), 588–682 (Brin), 767–814 (Connelly), 6302–35 (Levine), 6336–70 (Smith); see also, 2009 Statement, 129 FERC 61247 at 62337 ¶ 2 ("[t]he subject may then respond to this preliminary findings letter").

**9.** See 2009 Statement, 129 FERC 61247 at 62338 ¶ 6 (authorizing Enforcement to issue "Notices of Preliminary Violations").

**10.** See 2008 Statement, 123 FERC 61156 at 62014 ¶ 33 ("[s]taff attempts to reach a settlement with the subject of an investigation before recommending an enforcement proceeding").

**11.** "In the event the Investigating Officer determines to recommend to the Commission . . . that an entity be made a defendant in a civil action to be brought by the Commission, the Investigating Officer shall . . . notify the entity that the Investigating Officer intends to make such a recommendation." 18 C.F.R. § 1b.19.

**12.** See AR 493–532 (Barclays), 683–95 (Brin), 870–81 (Connelly), 6386–422 (Levine), 6423–60 (Smith).

Commission under section 31(d)(3)(A)." AR 88. Defendants were advised that if they chose the "immediate penalty assessment" route, and if the Commission assessed a penalty which Defendants failed to pay within 60 days, "the Commission will commence an action in a United States district court for an order affirming the penalty, in which the district court may review the assessment of the civil penalty *de novo*." AR 88.

### F. Answers & Election

Defendants filed Answers to the OSC on December 14, 2012.[13] All Defendants elected the immediate penalty assessment route, so that they could "have this case adjudicated *de novo* by a federal district court pursuant to sections 31(d)(1) and (3)(A) of the Federal Power Act ('FPA'), 16 U.S.C. §§ 823b(d)(1), (3)(A)." See AR 159–98 (Barclays).[14] On January 28, 2013, Enforcement replied to Defendants' Answers. AR 958–1062.

### G. Order Assessing Civil Penalties & District Court Filing

On July 16, 2013, FERC issued its Order Assessing Civil Penalties. AR 1–85. In the Order, FERC stated that Defendants had violated 16 U.S.C. § 824v(a) and the Anti–Manipulation Rule, and it assessed civil penalties and disgorgements against them. Id. On October 9, 2013, FERC filed this action, seeking an affirmance of its Order Assessing Civil Penalties. ECF No. 1.

This Court has jurisdiction under 16 U.S.C. § 823b(d)(3)(B).

## IV. DE NOVO REVIEW PROCEDURES

This Court's current task is to determine how it will proceed. The applicable

statute instructs the Court to "review de novo the law and the facts involved." 16 U.S.C. § 823b(d)(3)(B). FERC, in agreement with Defendants, asserts that "de novo" review:

> requires a "fresh, independent determination of 'the matter' at stake." *See Doe v. United States*, 821 F.2d 694, 697–98 (D.C. Cir. 1987) (en banc) (Ginsburg, J.R.B.) (citations omitted). "Essentially then, the district court's charge was to put itself in the agency's place, to make anew the same judgment earlier made by the agency." *Id.* at 698. This Court has fulfilled the de novo role when "the district judge made the same judgment earlier entrusted to the agency head … on the basis of information he found sufficient to make the judgment, and without deferring to the prior agency conclusion on the same matter."

ECF No. 125 at 8 (FERC); ECF Nos. 136 at 23 (Barclays), 140 at 9 (Smith), 141 at 10 (Levine). The dispute here is about what are "the law and the facts involved" that will be the basis for decision in this Court.

FERC asserts that "the law and the facts involved" are limited to the evidence and arguments that are contained in what it calls the "administrative record." ECF No. 125 at 22. Specifically, it argues, "issue exhaustion" bars Defendants from introducing new arguments or evidence here. ECF No. 166 at 15. FERC argues that there is no unfairness in this because Defendants "had the opportunity to submit additional factual affidavits to the Commission from any witnesses they wished the Commission to consider …." ECF No. 52 at 8; ECF No. 166 at 13–14. FERC concedes that additional proceedings, including expert testimony and discovery, may be necessary to resolve how much Defen-

---

**13.** AR 159–98 (Barclays), 533–87 (Brin), 696–766 (Connelly), 882–921 (Levine), 922–57 (Smith).

**14.** See also, 533–87 (Brin), 696–766 (Connelly), 882–921 (Levine), 922–57 (Smith).

dants should pay in disgorgement. In addition, FERC asserts that it is prepared to offer any additional evidence the Court deems necessary, and is "prepared to proceed with a trial" if a review of the record or supplementary evidentiary hearing is insufficient to decide the matter. ECF No. 52 at 11.

Defendants argue that "the law and the facts involved" includes any arguments they wish to make now, plus all evidence they can collect by means of discovery. ECF No. 136 at 55–61. Defendants argue that they are entitled to conduct discovery so that they can properly defend themselves against FERC's charges. Defendants point out that they never had the ability to test the evidence submitted to FERC "to ensure its relevance, reliability, fairness, competence or scientific validity." ECF No. 52 at 14. In any event, they argue, the evidence Enforcement chose to present to FERC—n the "administrative record"—consists of "cherry picked transactional data" and "a handful" of emails and instant messages ("IMs"). See ECF No. 52 at 13. Moreover, no "neutral trier of fact" has ever resolved the matter in a "contested evidentiary proceeding." ECF No. 52 at 14–15.

Defendants also argue that basic fairness, and their Due Process rights, require that they have the opportunity for a full contested hearing in this Court. ECF No. 136 at 61–63. They assert that they never intended to waive their right to a "full adjudicative process" when they elected to go to district court. ECF No. 52 at 14. To the contrary, they assert that FERC's Enforcement staff assured them that they could conduct discovery once the district

court case was filed. ECF No. 136 at 18. Moreover, they argue, the applicable statute, 16 U.S.C. § 823b(d)(3)(B), as interpreted by FERC itself in a policy statement, calls for a "de novo trial." ECF No. 136 at 60.[15]

## V.  ANALYSIS

### A.  The Meaning of the Statute

The Court first looks to the language and structure of the applicable statute, to determine whether discovery is required.

> The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. This often requires examin[ing] not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy. If the plain meaning of the statute is unambiguous, that meaning controls. If the statutory language is ambiguous, then we consult legislative history.

Wilson v. Comm'r, 705 F.3d 980, 987–88 (9th Cir. 2013) (citations and internal quotation marks omitted). The disputed statutory language provides that after FERC has assessed a penalty and waited 60 days:

> the Commission shall institute *an action* in the appropriate district court of the United States for an order affirming the assessment of the civil penalty. The court shall have authority to *review de novo the law and the facts involved*, and shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in Part such assessment.

---

**15.**  Barclays asserts that this case involves disputed "factual inferences and conclusions … which can only be resolved by a neutral factfinder at trial" if they cannot be resolved on summary judgment. ECF No. 136 at 26 (this matter "will be adjudicated de novo through motions for summary judgment and, if war-

ranted, a jury trial"). The Court anticipates that following discovery, Plaintiff will renew its motion as a dispositive motion under summary judgment practice. Since the matter may be resolved by summary judgment motions, the Court need not speculate on what other procedures might be warranted.

16 U.S.C. § 823b(d)(3)(B) (emphasis on disputed terms added).[16]

### 1. The structure of the statute

### a. The election

The structure of the statute, especially when viewed in light of the governing regulations and FERC's policies and procedures, exposes the flaw in FERC's position. Defendants who elect the ALJ route are entitled to conduct full discovery, and are not saddled with an "administrative record" compiled by FERC.[17] FERC offers no coherent explanation for why the statute would authorize full discovery before an ALJ but silently deny it if Defendants chose to go to district court.[18]

---

**16.** The applicable statute authorizes FERC to assess "a civil penalty of not more than $1,000,000" per day against any person who violates the anti-manipulation provision of the FPA, 16 U.S.C. § 824v(a). 16 U.S.C. § 825o-1(b). The statute further provides that the procedures of 16 U.S.C. § 823b(d) shall govern the assessment. Id. That section, in turn, provides that before FERC assesses a penalty, it must (1) provide the persons against whom the penalty is to be assessed a notice of the proposed penalty, and (2) inform them their right to elect the provisions of 16 U.S.C. § 823b(d)(2) or (d)(3). 16 U.S.C. § 823b(d)(1). If the notified persons choose Section 823b(d)(3), as Defendants did here, FERC "promptly" assesses a penalty, and if not paid within 60 days, the disputed statutory language governs. 16 U.S.C. § 823B(d)(3)(A), (d)(3)(B).

**17.** FERC's own regulations flesh out the procedures applicable to such a hearing. See 18 C.F.R. Part 385 ("Rules of Practice & Procedure"), Subpart E ("Hearings"). Under those regulations, the participating parties can "present such evidence, including rebuttal evidence, to make such objections and arguments, and to conduct such cross-examination, as may be necessary to assure true and full disclosure of the facts." 18 C.F.R. § 385.505. The parties can submit written testimony. Id. § 285.307. However, "[a]ny witness submitting written testimony must be available for cross-examination." Id. § 385.506. The presiding officer decides on the admissibility of proffered evidence. Id. § 385.509. Regarding discovery, the regulations provide that "participants may obtain discovery of any matter, not privileged, that is relevant to the subject matter of the pending proceeding, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having any knowledge of any discoverable matter." Id. § 385.402(a). The discovery methods made available to the parties are "data requests, written interrogatories, and requests for production of documents or things (Rule 406), depositions by oral examination (Rule 404), requests for inspection of documents and other property (Rule 407), and requests for admission (Rule 408)." Id. § 385.403(a). Non-parties may be compelled to provide testimony or documents. Id. § 385.409(a) (subpoena).

**18.** At oral argument, FERC asserted that by making this election, Plaintiff "rejected" the "formal adjudication" option available under 5 U.S.C. § 554 or 556, and instead enjoyed "the informal adjudication [under 5 U.S.C. § 555] contained in Option 2 followed by the Court's de novo review." Transcript at 8. FERC makes no mention of this "informal adjudication" in any of the papers it filed in this Court, nor in any administrative communication with Defendants. In any event, there are several problems with this argument. First, FERC does not explain why Defendants would be entitled to another full, formal, adjudicatory process if they chose the ALJ route, but are not entitled to it here. Second, FERC does not claim that it ever advised Defendants that opting for "informal adjudication" under 5 U.S.C. § 555 would preclude application of the Federal Rules of Civil Procedure once the case got into federal court (or that Defendants should somehow know this). Third, FERC's argument for why "adjudication" must have occurred here—an order only results from an adjudication, and FERC issued an order so therefore there must have been an adjudication (see Transcript at 12)—is simply a tautology, and is rejected on that ground. Fourth, FERC's argument appears to be contradictory, because FERC concedes that the order under review here is not "final." Transcript at 8 (APA does not apply because that only applies to "final agency actions"). Yet in order

Nothing in the wording or structure of the statute warrants this incongruous result. Indeed, the only statutory difference between the two available procedures is the election itself. That is because the election occurs *after* the full "administrative record" has been compiled. Thus, regardless of which election is made, Enforcement has already conducted the investigation, issued its preliminary findings and invited responses, conducted settlement negotiations, issued its notice of alleged violations, issued its 1b.19 letter and invited responses. In addition, regardless of the election, FERC has already issued its Order To Show Cause, and invited Defendants to file Answers. It is in those Answers that defendants make their election of whether to proceed with an ALJ or go to district court.

The one thing that does distinguish defendants' position at that point, is that if defendants choose the ALJ route, FERC simply notifies defendants of their opportunity for a hearing before an ALJ. See Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties ("2006 Statement"), 117 FERC ¶ 61,317, 62,531 ¶ II(1)(a)(i) (2006). If defendants choose the district court route instead, FERC determines—*without obtaining any additional evidence or argument*—whether a violation exists, and if so, "promptly" assesses the penalty and later, files the action in the district court. See id. at 62, 532 ¶ II(1)(b)(1), (b)(2); 16 U.S.C. § 823b(d)(3). FERC does not explain why this one administrative trigger should deny Defendants the discovery that they would be entitled to if they had made the other election. See Maxim Power Corp., 196 F.Supp.3d at 197 ("[i]f anything, by directing FERC to 'promptly assess' penalties under Option 2, the statute tells FERC not

to spend time on proceedings prior to assessing the penalty").

FERC argues that full proceedings in the district court would be a "do over" to which Defendants are not entitled. ECF No. 166 at 13–17. Yet the election to go the ALJ route provides for full proceedings after the "administrative record" has been compiled. FERC offers no explanation for why a "do over" is warranted with the ALJ route but not with the district court route. A much more sensible interpretation of the statute is offered by Defendants, namely, that "the administrative investigation was a *prelude* to adjudication of FERC's claims either in an administrative or federal court proceeding, at Defendants' option." ECF No. 52 at 20 (emphasis added).

In any event, there is no "do over" here. Defendants are requesting a contested hearing before a neutral decision-maker, with discovery. They have never had the opportunity to conduct discovery, could not compel witnesses to give testimony, had no opportunity to cross-examine witnesses, and had no opportunity to make their case before a neutral decision-maker. Defendants are asking for the opportunity to do those things for the first time here, in this Court.

Basic fairness also works against FERC's interpretation of the statute. FERC has not shown, or even asserted, that they ever warned Defendants that making this election would waive the discovery they are entitled to obtain with the ALJ election. To the contrary, FERC's enforcement staff assured Defendants that they would be entitled to conduct discovery if they made the district court election. AR 1029 n.333 ("[i]f the Commission determines to send this matter to federal court,

---

for there to have been an "adjudication," the FERC order would have to be "the whole or a

part of a *final* disposition." 5 U.S.C. § 551(6) (emphasis added).

staff may choose to offer calculations from testifying experts into evidence, and *Barclays and the individual traders will have the opportunity to conduct appropriate discovery* ) (emphasis added).[19] Moreover, FERC's institutional position—as opposed to its litigation position—is that defendants are entitled to a "de novo trial." See Procedures for the Assessment of Civil Penalties Under Section 31 of the Federal Power Act ("1988 Procedures"), 53 Fed. Reg. 32035, 32038 (August 23, 1988) ("when Rule 1509 district court procedures are followed, the assessment of civil [penalties] by the Commission *merely triggers the process leading to a de novo trial*") (emphasis added).[20] In light of this, it would be unjust to advise Defendants now, after their election, that they are not entitled to the promised discovery after all, and that they are not entitled to the promised "de novo trial." [21]

### b. Issue Exhaustion and the "administrative record"

FERC argues that this Court's consideration should be limited to the "administrative record," invoking the doctrine of "issue exhaustion." FERC argues that the Court should "hold that they [Defendants] waived all facts and legal arguments that they could have, but chose not to present to the Commission." ECF No. 166 at 11. FERC points out that its OSC specifically directed Defendants as follows: "In their answers, Respondents should address any matter, legal, factual or procedural, that they would urge in the Commission's consideration of this matter." ECF No. 166 at 13 (citing AR 88). Moreover, as noted above, Defendants had the opportunity to present evidence and arguments at other points during the administrative process. Thus, FERC argues that Defendants should be precluded from introducing new

19. Despite its open-ended assurances, FERC now argues that the only discovery needed is to determine the correct amount of disgorgement. See ECF No. 52 at 12 ("[t]he Commission may introduce expert testimony on the amount of disgorgement at the appropriate time, for which discovery may be appropriate"), 19 ("[a]t the time the Court considers the issue of disgorgement, Respondents would have a full opportunity to conduct discovery relating to any evidence (expert testimony or otherwise) the Commission offers at that time in support of its disgorgement calculation"). However, there was no such limitation expressed when Enforcement offered Defendants (and FERC) the assurance of discovery in district court.

20. FERC indicates that this statement is not to be relied upon. See ECF No. 52 at 10 n.2. That issue is addressed below.

21. At oral argument, FERC's counsel asserted that Defendants can solve their own problem by simply requesting that the Commission permit them to revoke their election ("defendants can request to go back to the Commission," [Transcript at 30] ), to get their full hearing with discovery. It appears that this consent would be given by FERC order, not by counsel who is arguing the case in court. See 16 U.S.C.A. § 823b(d)(3)(C) ("[a]ny election to have this paragraph apply may not be revoked except with the consent of the Commission"); see also, 18 C.F.R. § 385.1507(b) ("[a]ny election to have the procedures of Rule 1509 apply may not be revoked after the 30-day election period in paragraph (a) of this section, without the consent of the Commission"); see also, ETRACOM LLC and Michael Rosenberg, 155 FERC 61284 ¶ 36 (F.E.R.C. June 17, 2016) ("In the May 6, 2016 Order, the Commission provided Respondents an opportunity to rescind their election based on their assertion that they required discovery, so that they could be afforded discovery by an ALJ at the hearing should the ALJ find the requested discovery relevant"). Counsel has not directed the Court's attention to any FERC order permitting Defendants to rescind their election, or indicating that a request to revoke would be granted. In any event, the possibility of such an election—even assuming FERC would consent—does not explain why Defendants can be deprived of process when, as they are expressly permitted to do by statute, they instead elected to come to federal court.

evidence because they "had a full opportunity, without limitation, to present any arguments and evidence to the Commission" before FERC issued its Assessment Order. See ECF No. 166 at 15.

i. Issue exhaustion does not apply here

FERC argues that " 'absent exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time.' " ECF No. 166 at 15 (quoting Getty Oil Co. v. Andrus, 607 F.2d 253, 256 (9th Cir. 1979)). However, the cases FERC cites address the doctrine of issue-exhaustion in situations where a federal court is reviewing *final agency action* made reviewable by the Administrative Procedure Act, or its equivalent. See Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (reviewing final agency decision to deny Social Security benefits, the Court holds that plaintiff did not waive issues even though she failed to raise them before the agency's final decision was made); United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (challenge to Interstate Commerce Commission's final order issuing a certificate of public convenience); Getty Oil Co. v. Andrus, 607 F.2d 253 (9th Cir. 1979) (reviewing final agency action, Court holds that objection was timely because it was raised before completion of the administrative process). As FERC itself argues, this action does not involve the review of final agency action under the APA or its equivalent. See ECF No. 166 at 11–12; Transcript at 8.

■ Indeed, there is no final agency action at all, as that term is used in the cited cases. Here, the decision under review is FERC's assessment of penalties and disgorgements. However, the statute and implementing regulations and policy statements plainly expect that this assessment, and the subsequent 60–day waiting period, is merely a mechanism for getting the proceeding into district court. Unlike a final agency decision or order, this assessment did not have a "direct and immediate . . . effect on the day-to-day business" of Barclays or the Defendants.[22] See FTC v. Standard Oil Co. of California, 449 U.S. 232, 239, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (internal quotation marks omitted). Nor did it have "the status of law" for which "immediate compliance with [its] terms was expected." To the contrary, compliance with the assessment order was expressly not expected; it was expected that Defendants would *not* comply, as this was the only statutory mechanism by which defendants who had made this election could challenge the assessment.

■ Even if there were final agency action here, issue-exhaustion is not automatic. Rather, "requirements of administrative issue exhaustion are largely creatures of statute." Sims, 530 U.S. at 107, 120 S.Ct. 2080. FERC identifies no statute that requires issue exhaustion here, even though Congress plainly knows how to require it when it wishes to do so. See, e.g., 15 U.S.C. § 77i (a) (on judicial review of an order of the Securities and Exchange Commission, "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission"); 29 U.S.C.A. § 160(e) (when National Labor Relations Board seeks judicial enforcement of its order, "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances").[23]

---

**22.** This is not to dispute the individual Defendants' assertions at oral argument that they had been bankrupted and their lives had been ruined by these proceedings.

**23.** Indeed, Congress has done so in the FPA

FERC's regulations do make clear that when Defendants filed their Answers to the order to show cause, they were required to make a clear and concise statement of the disputed factual allegations, the law relied upon, and all defenses. 18 C.F.R. § 385.213(c). However, it does not state or otherwise indicate that Defendants would be limited to those statements in the district court proceeding.

### ii. Defendants' opportunity to present evidence

FERC argues that Defendants "had the opportunity to submit additional factual affidavits to the Commission from any witnesses they wished the Commission to consider . . . ." ECF No. 52 at 8. That is not accurate. It ignores the fact that Defendants have never had the power to compel any witness to give an affidavit (or a deposition, or to submit to cross-examination).

Therefore, even if Defendants knew of witnesses whose testimony would convincingly refute any market manipulation claims, Defendants could not compel those witnesses to submit to a deposition or to produce the evidence that would convince FERC that the charges had no merit. Instead, Defendants were forced to rely upon Enforcement's investigation, and whatever evidence they could obtain on their own from volunteers, in their efforts to convince FERC not to file this lawsuit.

As Defendants point out, "[t]here is a fundamental difference between forcing a party to rely on and develop its defenses based entirely on the discovery taken by its opponent and allowing that party to engage in its own independent discovery in support of its own defenses." ECF No. 52 at 22. It defies notions of fairness and common sense that this Court would continue to deny Defendants the opportunity to produce evidence, under compulsion, that they believe could refute the charges against them.

### iii. The "administrative record"

■ FERC argues that this proceeding should be restricted to the "administrative record." However, it cites no authority for this proposition. To the contrary, the applicable statute makes no mention of an "administrative record." See 16 U.S.C. §§ 823b(d)(3)(B). FERC's regulations, and its policy statements also make no mention of an administrative record. See, e.g., 18 C.F.R. §§ 1b.1, et seq. (investigations), 385.101, et seq. (rules of practice). Even apart from Defendants' slant on the record as being "cherry picked" from the evidence available, it is clear that this record contains only selected transcripts, selected pieces of evidence, and selected trading records, out of all the evidence the Enforcement staff collected. FERC has not identified any statute, regulation or policy

---

itself, but only when the defendants choose the other option into federal court, namely, the route that includes an ALJ hearing and an appeal to the Court of Appeals. The statute provides, in that case, that judicial review will be had in accordance with the Administrative Procedure Act ("APA"). 16 U.S.C. § 823b(d)(2)(B) ("Any person against whom a penalty is assessed under this paragraph may, within 60 calendar days after the date of the order of the Commission assessing such penalty, institute an action in the United States court of appeals for the appropriate judicial circuit for judicial review of such order in accordance with chapter 7 of Title 5"). The APA, in turn, requires issue exhaustion. See

Native Ecosystems Council v. Dombeck, 304 F.3d 886, 899–900 (9th Cir. 2002) (reviewing agency action under the APA, the court states: "Because plaintiffs raised the issue of Forest Plan amendment procedures sufficiently for the agency to review these procedures and to conclude that the Forest Service complied with NFMA, we hold that the plaintiffs exhausted their administrative remedies as to the issues they raise before us. This result comports with the purposes of the exhaustion requirement of avoiding premature claims and ensuring that the agency be given a chance to bring its expertise to bear to resolve a claim.")

that its staff was following in creating this record, and upon which a $487.9 million assessment would rest.

Congress plainly knows what an administrative record is, and how to limit court review to that record. See, e.g., 16 U.S.C. § 839f(e)(2) ("[t]he record upon review of such final actions shall be limited to the administrative record compiled in accordance with this chapter"); 42 U.S.C. § 405(g) ("As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, *upon the pleadings and transcript of the record,* a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") (emphasis added); 42 U.S.C. § 9613(j)(1) ("judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record"). Congress in this statute has not expressly limited this Court's review to any "administrative record." [24]

Indeed, Congress itself has made clear that "de novo" review, as contrasted with reviews limited to the "administrative record," are entirely different types of reviews. See, e.g., 30 U.S.C. § 1719 (j) (regarding judicial review of a final order assessing a penalty by the Secretary of the

Interior, "[r]eview by the district court shall be only on the administrative record and not de novo"); 7 U.S.C. § 2023 (individual aggrieved by the Secretary of Agriculture's decision may obtain "judicial review" in the district court, which "shall be a trial de novo ..., *except that* judicial review of determinations regarding claims made pursuant to section 2025(c) of this title shall be a review on the administrative record") (emphasis added). Here, Congress has directed the Court to conduct a "de novo" review, but has not expressly limited that review to an administrative record.

Even if the Court wanted to limit its review to an administrative record, FERC has offered no explanation for why the one it claims to have compiled is a proper administrative record. The record here does not, for example, consist of the entire investigative record compiled by FERC's Enforcement staff. The investigative record contains, at a minimum, "in excess of one million pages of documents," "hundreds of thousands of electricity trades," and "25 days of investigative depositions of Barclays' current and former employees ... and of certain third parties." ECF No. 52 at 6. Yet the "administrative record" consists of (1) those portions of the investigative documentary and data record selected by Enforcement staff for presentation to FERC, (2) those 16 days of deposition transcripts Enforcement selected for presentation to FERC,[25] (3) evidence

---

24. At oral argument, FERC cited <u>FERC v. Silkman</u>, 1:16–cv–0205 JAW, ECF No. 95 (D. Me. January 26, 2017), for the proposition that there was an "adjudication" on the administrative record. But in Silkman the court stated that *"[a]fter reviewing the briefs and evidentiary record* on the Show Cause Orders, the Commission issued orders on August 29, 2013 assessing civil penalties against Lincoln, CES, and Mr. Silkman." Here, FERC, in its Assessment Order, never stated what the "administrative record" was, nor that it had

based its determination upon it. Even if it had done so, there is no guidance anywhere as to what goes into such a record and no notice to Defendants, or this Court, of exactly what that record is.

25. Of the 25 days of investigative depositions, 16 are included in the AR. See AR 1082–5555 (Brin 2 days, Connelly 4 days, Dhabliwala 1 day, Gerome 1 day, Gold 1 day, Levine 2 days, Rainess 1 day, Smith 2 days, and Vath 2 days).

Defendants were able to assemble from their own records and from volunteers, and (4) briefing and argument from Enforcement staff and Defendants. See AR 1–8,488. FERC offers no explanation for why Enforcement did not present the omitted documents, data, and transcripts, nor does it explain why this Court should not consider them.[26]

### 2. The language of the statute

■ This Court "must give substantial deference to an agency's interpretation of its own regulations." Thomas Jefferson University v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); Decker v. Northwest Environmental Defense Ctr., 568 U.S. 597, 133 S.Ct. 1326, 1337, 185 L.Ed.2d 447 (2013) ("[w]hen an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation") (internal quotation marks omitted). FERC's own institutional interpretation of the language of this statute, and FERC's identically worded implementing regulation, shows that in its institutional role—as opposed to its role as a party to litigation—FERC agrees that Defendants are entitled to full discovery in this Court.

As noted, the statute calls for FERC to institute an action where the court will conduct a "review de novo" of FERC's Assessment Order. 16 U.S.C. § 823b(d)(3)(B). In 1988, FERC promulgated 18 C.F.R. § 385.1509 ("Rule 1509"), which implements this provision of the statute. 1988 Procedures, 53 Fed. Reg. 32035 (final rule promulgating 18 C.F.R. §§ 385.1501–11). Contemporaneously with promulgating this regulation, FERC interpreted it, and implicitly, the identically worded language of the governing statute.[27] Specifically, FERC stated that "when Rule 1509 district court procedures are followed, the assessment of civil [penalties] by the Commission *merely triggers the process leading to a de novo trial.*" 1988 Procedures, 53 Fed. Reg. at 32038 (emphasis added).

FERC's 1988 position is entirely consistent with its much more recent unconditional assurance to Defendants that "[i]f the Commission determines to send this matter to federal court, staff may choose to offer calculations from testifying experts into evidence, and *Barclays and the individual traders will have the opportunity to conduct appropriate discovery.*" AR 1029

---

**26.** For example, numerous "instant messages" authored or received by Erin Hunzeker, and other statements allegedly made by or to Hunzeker, are included in the "administrative record." See, e.g., AR 110 n.68, 131 n.148, 135, 991, 1458–59, 1462, 1582–85, 1635–37, 3947, 4048–49, 4642–43, 4653–55, 4759, 4762–63, 4956–58, 4971–78, 4980–81, 5004–05, 5007–08, 5580–81, 5585–86, 5620, 5651, 5770–71, 6062, 6116. According to Hunzeker's sworn declaration, Enforcement deposed him twice. ECF No. 153 at 6 ¶ 15 ("FERC deposed me twice in connection with its investigation in this matter. During those depositions, I provided testimony regarding several of the communications and other topics discussed in this declaration."). Yet the transcripts of his depositions are not included in the "administrative record," and FERC offers no explanation for the omission. Such

an "administrative record" cannot be the basis for a neutral "adjudication" by FERC or by this Court.

**27.** It does not matter whether this is considered an interpretation of the regulation or of the governing statute, because they are identically worded. The standard for reviewing FERC's interpretation of its governing statute is plainly met here. The court "must first determine whether the intent of Congress is clear." Aragon–Salazar v. Holder, 769 F.3d 699, 703–04 (9th Cir. 2014) (internal quotation marks omitted). If it is not, the court "must then determine whether the agency's answer is based on a permissible construction of the statute." Id. (internal quotation marks omitted). As discussed in the text, FERC's 1988 interpretation is an entirely permissible construction of the statute.

n.333 (emphasis added).[28] FERC's current litigating position—that no discovery is warranted—does not follow from the language of the statute or the regulation, and would work a significant unfairness on Defendants.[29]

FERC argues that its 1988 interpretation of the regulations "predated the enactment of the Energy Policy Act of 2005," and that its current interpretation, as stated in a more recent policy statement, is that Defendants are entitled to "de novo review." ECF No. 52 at 10 n.2. The Court notes that FERC's papers, while recounting this history, does not expressly argue that its 1988 interpretation of the applicable regulation has been disavowed or overruled by FERC's current institutional position. As far as the Court can tell, FERC's institutional position has not changed.

The language of 16 U.S.C. § 823b(d)(3)(B) has not changed since 1986,[30] and the language of 18 C.F.R. § 1509(b) has not changed since 1988.[31] Accordingly, it is not clear why the addition of anti-manipulation authority in the Energy Policy Act of 2005, and increasing the amount of penalties FERC could seek, see 16 U.S.C. § 825o–1, would have any effect on the interpretation of the unchanged provisions of 16 U.S.C. § 823b(d)(3)(B), or the unchanged regulations governing the assessment of penalties.

FERC points out that a more recent policy statement does not contain the "de novo trial" language, and instead repeats the language of the statute, which calls for "review de novo." ECF No. 52 at 11 n.2, citing 2006 Statement. FERC's description of the two statements is correct, but FERC does not explain how this new language effected a repudiation of the prior interpretation of the unchanged statute and regulation. To the contrary, rather than stating that a trial was no longer permitted, it simply adopted the language of the statute, language which had not changed since it was added to the law in 1986.

At oral argument, FERC asserted that it had overruled that position in ETRA-COM LLC and Michael Rosenberg, 155 FERC 61,284 at ¶ 35 (F.E.R.C. June 17, 2016). See Transcript at 30. However, ETRACOM—which in any case is an Order Assessing Civil Penalties, not a policy statement—does not even mention the 1988 policy statement. Moreover, the document's discussion of the review standard appears to confirm, rather than overrule,

---

**28.** FERC now argues that discovery should be limited to determine the disgorgement amount. See, e.g., ECF No. 52 at 12. However, there was no such express limitation stated when Enforcement offered Defendants (and FERC) the assurance of discovery in district court.

**29.** Accordingly, the Court need not wade into the complicated waters of determining what level of deference, if any, to give to FERC's current litigating position. See Presidio Historical Ass'n v. Presidio Trust, 811 F.3d 1154, 1166 n.7 (9th Cir. 2016) (deference to an agency's litigating position varies "depending on the factual circumstances").

**30.** See P.L. 99–495, 100 Stat 1243 (October 16, 1986) ("The court shall have authority to

review de novo the law and the facts involved, and shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in Part . . .") (emphasis added).

**31.** See 1988 Procedures, 53 Fed. Reg. at 32040 (promulgating 18 C.F.R § 385.1909(b)) ("[i]f the civil penalty is not paid within 60 calendar days after the assessment order is issued under paragraph (a) of this section, the General Counsel, unless otherwise directed by the Commission, will institute an action in the appropriate United States District Court for an order affirming the assessment of the civil penalty").

the 1988 policy statement's position that the election to go to federal court "merely triggers the process leading to a de novo trial":

> The Commission's position is that the "authority to review de novo" provided by statute under FPA section 31(d)(3) provides substantial procedural discretion to the district court based upon the particular circumstances of the case. In some cases, the court may decide that a review of the order itself and of the record of the administrative proceeding provides a sufficient basis for determination. But, in other cases, *the court has discretion to decide that supplemental evidence is needed and that discovery is warranted.*

ETRACOM, 155 FERC 61,284 ¶ 35 (emphasis added). FERC knows how to overrule prior policy statements when it wishes to do so. See Enforcement of Statutes, Regulations & Orders ("2008 Statement"), 123 FERC ¶ 61,156, 62,010 (May 15, 2008) ("[a]ccordingly, we issue this Revised Policy Statement, *which supersedes our 2005 Policy Statement*") (emphasis added). It did not do so here.

Moreover, FERC offers no logical explanation for re-interpreting either the language of the statute or the regulation in the way it suggests. The enactment of the Energy Policy Act of 2005 increased the penalties FERC could seek from $10,000 per day, to $1 million per day. See Section 1284(e)(2) of the Energy Policy Act of 2005, P.L. 109–58, 119 Stat 594; 16 U.S.C. § 825o–1(b). FERC offers no explanation for the counterintuitive notion that a 100–fold *increase* in Defendants' potential liability should *reduce* the process they are entitled to.

Finally, nothing in the wording of the statute gives any hint that such divergent results would obtain depending on whether the assessed party chose the ALJ route or the district court route.

### 3. Specific language

#### a. "Review"

FERC argues that by using the word "review," Congress cannot have intended to authorize the district court "to look beyond the record submitted to the Commission in the administrative proceeding" by Enforcement and the Defendants. ECF No. 52 at 11. In support, FERC cites Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094 (9th Cir. 1999) (en banc), cert. denied, 528 U.S. 964, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999), a case decided under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. ECF No. 166 at 12. In Kearney, the district court's review of the ERISA benefits denial was governed by the "de novo" standard. Kearney, 175 F.3d at 1090. The Ninth Circuit held in Kearney that under that standard, the district court should look only at the record that was presented to the ERISA administrator, whose decision was under review. Id. at 1091 (the district judge did not abuse his discretion in limiting review "to the evidence that was before the administrator"). FERC commendably concedes that "the FPA differs from ERISA," although it argues that "the Court has similar discretion here as part of its de novo review." ECF No. 166 at 13.

In fact, the difference between the de novo review authorized in Kearney, and the de novo review authorized here, goes much deeper than FERC's concession. Under the ERISA statute, the administrator whose decision is being reviewed was a *fiduciary* for the person seeking benefits.[32]

---

**32.** "The procedure the statute requires for disputed claims includes 'a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.'" Kearney, 175 F.3d at 1094 (quoting 29 U.S.C. § 1133(2)).

Neither FERC, nor its enforcement staff, are even alleged to be fiduciaries for the Defendants. However, a principal reason for limiting review to the administrative record in Kearney was precisely because the court was called upon to review a fiduciary's decision. Kearney, 175 F.3d at 1094 ("The means that suggests itself for accomplishing trial of disputed facts, *while preserving the value of the fiduciary review procedure*, keeping costs and premiums down, and minimizing diversion of benefit money to litigation expense, *is trial on the administrative record*, in cases where the trial court does not find it necessary under *Mongeluzo* to consider additional evidence") (citing Mongeluzo v. Baxter Travenol Disability Ben. Plan, 46 F.3d 938, 943 (9th Cir.1995)) (emphases added).

At no time was FERC's role, or that of its enforcement staff, that of a fiduciary. Rather, FERC is the enforcer of the governing statute, and therefore acts as a civil prosecutor before this Court. The Court has no reason whatsoever to question the diligence or fairness of the Enforcement staff or the FERC itself.[33] The Court sees nothing in the record before it to doubt that FERC is composed of persons "of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." Withrow v. Larkin, 421 U.S. 35,
55, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (quoting United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429 (1941)). However, FERC in issuing the Assessment Order was not "hearing and deciding on the basis of the evidence" presented at a "contested hearing," as was the state Examining Board in Withrow, or the "Cabinet officers charged by Congress with *adjudicatory* functions" in Morgan.[34] FERC is wrong in arguing that any alleged lack of "objectivity" by Enforcement or FERC amounts to an assertion "that the Commissioners acted improperly." See ECF No. 166 at 13. In this situation, it appears to be FERC's proper role to act as an aggressive enforcer—a civil prosecutor—of the FPA, and not to be an objective adjudicator of the facts.

In any event, FERC is not correct when it argues that the word "review" necessarily means that the district court is limited to the administrative record. When Congress intends to limit de novo "review" to the administrative record, it knows how to do so. See 5 U.S.C.A. § 552(a)(4)(A)(vii) ("In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo: *Provided,* That the court's review of the matter shall be limited to the record before the agency."). Congress did not do so here.[35]

---

**33.** For example, in its Staff Report, the Enforcement Staff reported to FERC that Barclays had given its full cooperation during the investigation. AR 156.

**34.** See Morgan, 313 U.S. at 421, 61 S.Ct. 999 (emphasis added). FERC's argument here would be more properly directed at a defense of its ALJ procedures, where it would be called upon to render a fair decision as adjudicator after having been exposed to evidence during the investigative phase:

No specific foundation has been presented for suspecting that the Board had been prejudiced by its investigation or would be disabled from hearing and deciding on the basis of the
evidence to be presented at the contested hearing. The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a later adversary hearing.

Withrow, 421 U.S. at 55, 95 S.Ct. 1456.

**35.** It is not clear to the Court what point FERC was making with its citations at oral argument to 49 U.S.C. §§ 114(v)(3) (which makes no reference to "review" in district court), 14914 (same), or to 49 C.F.R. §§ 107.317 (which makes no reference to any court proceedings), 107.319 (same), 1503.413 (same). See Transcript at 17–21.

The statutes FERC cited to the Court at oral argument also confirm that when Congress means to limit district court "review" to an administrative record created by the agency, it says so, explicitly. See 33 U.S.C.A. §§ 1319(g)(8)(B) (Clean Water Act) ("[t]he Administrator or the Secretary shall promptly file in such court a certified copy of the record on which the order was issued"), 1321(b)(6)(G) (Water Pollution Control Act) (same); 42 U.S.C. §§ 300h–2(c)(6) (Safe Drinking Water Act) ("[t]he Administrator shall promptly file in such court a certified copy of the record on which such order was imposed"), 7413(d)(4) (Clean Air Act) ("the Administrator shall file in such court a certified copy, or certified index, as appropriate, of the record on which the administrative penalty order or assessment was issued"), 9609(a)(4) (Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"))("[t]he President shall promptly file in such court a certified copy of the record upon which such violation was found or such penalty imposed").

Also, in United States v. First City Nat. Bank of Houston, 386 U.S. 361, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967), the applicable statute provided that "[i]n any such action, the court shall *review de novo the issues presented.*" 12 U.S.C. § 1828(c)(7)(A) (emphasis added). In interpreting this phrase—strikingly similar to the language of the statute at issue here—the Court cautioned against focusing on the word "review," because "[t]he critical words seem to us to be 'de novo' and 'issues presented.'" First City, 386 U.S. at 368, 87 S.Ct. 1088. Indeed, it noted that "[t]he words 'review' and 'trial' might conceivably be used interchangeably." Id.[36]

Here, the governing statute nowhere requires FERC to file an "administrative record" with the Court, or to certify what facts or evidence it relied upon in making its assessment. Thus, the Court has no way to know whether, for example, FERC considered and relied upon the testimony of Hunzeker (or other deposed witnesses whose transcripts are not included in the "record"), but Enforcement simply decided it was not necessary to include his testimony in the "administrative record."

### b. "The facts involved"

In Wilson, the statute instructed the court to determine the appropriate relief available in light of "all the facts and circumstances," a phrase that is similar to "the facts involved." See Wilson, 705 F.3d at 994 (quoting 26 U.S.C. § 6015(e)(1)(A), (f)(1)). Having concluded that the word "determine" signaled that the court was to use a "de novo" standard in making its decision, Wilson set out to determine whether "all the facts and circumstances" limited the court to the administrative record compiled by the IRS:

> In the absence of any limiting language directing the Tax Court to consider only that evidence before the Commissioner during the administrative phase of review, "determining" the validity of a taxpayer's request for innocent spouse relief in light of "all the facts and circumstances" suggests a de novo scope of *evidentiary* review . . . .

Wilson, 705 F.3d at 988 (emphasis added). The Ninth Circuit accordingly found that the Tax Court was correct to consider evidence beyond the administrative record compiled by the agency. " 'Taking into account all the facts and circumstances' is not possible if the Tax Court can review only the evidence available at the time of the Commissioner's prior determination." Wilson, 705 F.3d at 989. FERC identifies

---

**36.** Moreover, as in First City, the FERC's Assessment here is "informal, no hearings in the customary sense" having been conducted.

See First City, 386 U.S. at 368, 87 S.Ct. 1088. In addition, as in First City, "no record in the customary sense" has been created. Id.

no language in the statute, nor its regulations or policy statements that limit (or purport to limit) this Court's consideration to the evidence presented to FERC during the administrative process.

Defendants also argue that their Due Process rights compel the Court to afford them full discovery. The Court has no need to engage in a constitutional analysis, because the language of the statute is sufficiently clear that Congress intended Defendants to have a chance to defend themselves in a contested, adjudicatory setting, whether before the ALJ or in this Court. See Fair Housing Council of San Fernando Valley v. Roommate.com, LLC, 666 F.3d 1216, 1222 (9th Cir. 2012) ("[i]t's a well-established principle that statutes will be interpreted to avoid constitutional difficulties") (internal quotation marks omitted). However, the Court notes that even in the absence of clear intent by Congress, a contrary determination that Congress intended to allow this Court to affirm $487.9 million in penalties and disgorgements against Defendants without ever affording them the opportunity to defend themselves in a contested, adjudicatory setting before a neutral decision-maker would require a thorough analysis of Defendants' constitutional concerns.[37] See Maxim Power Corp., 196 F.Supp.3d at 194–97 (balancing defendant's "private interest" with FERC's "interest in efficient administration of penalties under Option 2").

### c. "Institute an action"

Defendants argue that because the statute contemplates "an action" in district court, they are entitled to full discovery and all the protections of the Federal Rules of Civil Procedure. ECF No. 136 at 56. It is not seriously in dispute that this action is governed by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 1 (with exceptions not relevant here, "[t]hese rules govern the procedure in all civil actions and proceedings in the United States district courts ...."). However, Congress has in other cases called for the institution of "a civil action" to review an administrative decision, while limiting that review to the administrative record. See 42 U.S.C. § 405(g) (plaintiff may file "a civil action," and the court's decision will be based "upon the pleadings and transcript of the record" before the agency). Therefore, the fact that this proceeding is called an "action" does not resolve the questions before the Court.

### B. Other Considerations

FERC argues that since it issued the Assessment Order based only upon the administrative record, the Court should decide this case based only upon that record. See ECF No. 52 at 9, 166 at 15–16. As discussed above, there is no real showing that FERC based its determination upon this "administrative record."

In any event, this argument fails to acknowledge the fundamentally different position FERC was in when it was called upon to decide whether to civilly prosecute Defendants, and the position this Court is in, as neutral decision-maker of the conflict between FERC and Defendants. FERC has identified nothing in any statute, regulation or policy statement that requires FERC to act as a neutral decision-maker when it was deciding whether to prosecute Defendants. Thus, as far as the Court can tell, FERC is not required to find by a preponderance of the evidence (or by any other standard) that the evidence warrants filing suit. To the contrary, FERC is charged by statute with *enforcing* and administering the law, not offering a neutral interpretation of it, or dispassionately hearing Defendants' arguments that they

---

37. The Court also sees no need to take Defendants up on their request for a legislative history analysis, as the meaning of the statute is sufficiently clear.

should not be sued. Accordingly, there is nothing prohibiting FERC from deciding to prosecute based entirely on evidence presented by its Enforcement staff, ex parte presentations made to it by Enforcement staff urging it to file suit,[38] and even its own desire to "push the envelope" or to make new law on what constitutes market manipulation in the energy markets.[39] In fact, according to the statute, FERC's determination that Defendants violated the law is simply a mechanism for getting the case into district court. There is nothing in the statute that requires that this determination be based upon a neutral adjudicative decision-making process.

In the normal civil action in this Court, the plaintiff (or whoever bears the burden of proof) must actually "prove" its case, and this is no less true when nearly $500 million is at stake. Such proof involves subjecting the evidence presented by both sides to the give and take of the adversarial system. This has not happened thus far. There is nothing in the record that shows that Enforcement "proved" that these Defendants broke the law, or that Defendants had a true opportunity to defend themselves. Being given the opportunity to provide "affidavits"—from volunteers—is not the same as the ability to cross-examine Enforcement's witnesses. Indeed, even if this Court were to agree that the sole question presented is whether FERC should be affirmed based upon the "administrative record," it would at least allow Defendants the opportunity to subject *that* evidence to proof. At a minimum, Defendants would have the opportunity to depose any person whose evidence (testimonial or otherwise) Enforcement received or presented to FERC.[40]

---

**38.** The Court is aware that FERC rules prohibit "off the record" communications between Enforcement and FERC once the OSC issues. 2008 Statement, 123 FERC 61156 at 62014 ¶ 36. However, this does not seem to prohibit ex parte communications, as long as they are put "on the record," and it does not prohibit FERC from making the record "nonpublic." See 18 C.F.R. § 375.205(a)(10) (authorizing a "closed meeting" when the topic is "the Commission's participation in a civil action or proceeding"). Moreover, the Court is not aware of any rules that prohibit Enforcement staff from engaging in off the record communications *before* the OSC issues. The Court is also aware that throughout FERC's Enforcement proceedings, "the subject of an investigation has the right and the means to make its views known to staff and the Commission." 2008 Statement, 123 FERC 61156 at 62015 ¶ 40. However, this does not give subjects access to the witnesses who testified before the Enforcement staff, and whose testimony was presented to FERC in the administrative record.

**39.** For example, Defendants assert that the Intercontinental Exchange ("ICE") conducted an inquiry into allegations similar to those made against Defendants here, and found that Defendants "did not engage in any improper conduct." ECF No. 52 at 23. The Court does not know if this assertion is correct, but if it is, it might work an injustice on Defendants to deprive them of the ability to compel production of this allegedly exculpatory report. The Court is aware that Defendants' presentations were also before FERC when it made its decision. However, there appears to be nothing in any statute, regulation or policy statement that prohibits FERC from disregarding those submissions, or according them very little weight.

**40.** The Court is aware of FERC's regulations that require Enforcement staff to disclose any exculpatory ("Brady") material it happens to find. 2009 Statement, 129 FERC 61248 at 62340 ¶ 9 ("During the course of an investigation conducted under Section 1b of the Commission's regulations, Enforcement staff will scrutinize materials it receives from sources other than the investigative subject(s) for material that would be required to be disclosed under *Brady*. Any such materials or information that are not known to be in the subject's possession shall be provided to the subject."). As far as the Court can tell, this policy does not require Enforcement to present to FERC all the evidence it collected, to actively seek out exculpatory material, or to follow leads that might lead to exculpatory material.

## VI. CONCLUSION

■ As do the other courts that have examined this issue, this Court "thinks it more natural to assume that both Options allow defendants to fully develop their factual defenses, just in different settings." City Power, 199 F.Supp.3d at 232. Indeed, the district court option "places judicial review in a district court, where factual development through discovery is the norm." Id. at 231.

Accordingly, IT IS HEREBY ORDERED that:

1. FERC's Motion To Affirm Civil Penalties (ECF No. 125) is DENIED, but without prejudice to its renewal as a dispositive motion under the Federal Rules of Civil Procedure, at an appropriate time.

2. The parties are entitled to conduct discovery pursuant to the Federal Rules of Civil Procedure.

3. Within sixty (60) days of the date of this order, the parties shall again meet and confer as required by Fed. R. Civ. P. 26(f) and shall prepare and submit to the Court a joint status report that includes the Rule 26(f) discovery plan. The joint status report shall address the matters set forth in this Court's Order Requiring Joint Status Report, ECF No. 2 ¶ 4.

IT IS SO ORDERED.